820 A.2d 143

**C & M DEVELOPERS, INC., Appellant**

**v.**

**BEDMINSTER TOWNSHIP ZONING HEARING BOARD, Appellee.**

Supreme Court of Pennsylvania.

Argued April 10, 2002.

Decided Nov. 1, 2002.

Reargument Denied Dec. 30, 2002.

4

George Michael Carr, John A. Van Luvanee, Doylestown, James Charles Schwartzman, Philadelphia, for appellant, C & M Developers, Inc.

John Bernard Rice, Perkasie, Stephen P. Imms, Harlesville, for appellee, Bedminster Tp. Zoning Hearing Bd.

Sean Patrick Delaney, Thomas L. Wenger, Harrisburg, for appellee amicus curiae, PA State Ass'n of Tp. Sup'rs.

Patrice M. Scully, Terry W. Clemons, Doylestown, for appellee amicus curiae, Bucks County Ass'n of Tp. Officials.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION OF THE COURT

Justice NIGRO.

Appellant C & M Developers, Inc. appeals from the order of the Commonwealth Court affirming the Court of Common Pleas of Bucks County's order sustaining the amended Zoning Ordinance of Bedminster Township ("Township") against Appellant's challenges. We reverse.

On February 14, 1996, the Township Board of Supervisors ("Board") enacted Resolution 96–02 pursuant to Section 609.2 of the Pennsylvania Municipalities Planning Code ("MPC"),[1] 53 P.S. § 10609.2.[2] Resolution 96–02 declared the Township's Zoning Ordinance invalid based on its failure "to provide for cluster housing options or to designate sufficient areas for mixed use developments, and because the lot sizes set forth ... may not all be legally justified." R.R. 2364a. Therefore, the Board directed the Township Planning Commission

1. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11201.

2. Section 609.2 provides:

> If a municipality determines that its zoning ordinance or any portion thereof it substantially invalid, it shall take the following actions: (1) A municipality shall declare by formal action, its zoning ordinance or portions thereof substantially invalid and propose to prepare a curative amendment to overcome such invalidity.
>
> ....
>
> (2) Within 180 days from the date of the declaration and proposal, the municipality shall enact a curative amendment to validate, or reaffirm the validity of, its zoning ordinance pursuant to the provisions required by section 609 in order to cure the declared invalidity of the zoning ordinance.
> (3) Upon the initiation of the procedures, as set forth in clause (1), the governing body shall not be required to entertain or consider any landowner's curative amendment filed under section 609.1.

53 P.S. § 10609.2.

("Commission") to amend the ordinance in order "to cure the alleged invalidity." *Id.*

On August 12, 1996, the Board amended the Township's Zoning Ordinance.[3] The amended Zoning Ordinance (the "Ordinance") declares that "the objective of Bedminster Township [is] to preserve prime agriculture and farmland and to provide for the orderly development of the Community." R.R. 2561a. To that end, the Ordinance establishes an Agricultural Preservation ("AP") District, which covers approximately ninety percent of the Township,[4] and in which landowners must take measures to protect and preserve a portion of their land for agricultural purposes.[5] To accommodate this new AP District, the Ordinance also eliminates two residentially zoned

3. The document containing the Commission's proposed changes to the Township's Zoning Ordinance was entitled Ordinance 118. The Board adopted Ordinance 118, and thus, the Township's Zoning Ordinance was amended in accordance with Ordinance 118.

 On the same date that the Zoning Ordinance was amended, the Board also adopted an updated version of the Township Comprehensive Plan, which was also prepared by the Commission and explains the zoning changes made in the amended Zoning Ordinance. The Plan provides a detailed description of the present characteristics of the Township and explains what the Township's goals are for the future. In the Plan, the Commission states that the Plan was changed in order to accomplish the following two primary goals:
 1) to retain the agricultural and rural character of Bedminster Township-created by rolling farmland, steep slopes, meandering streams and woodland, and a wealth of historic structures; and 2) to provide for the township's fair share of residential and nonresidential growth.
 Township Comprehensive Plan 1996, R.R. 2409a.

4. The Township has a total of 19,303 acres. R.R. 2433a. Thus, the AP District comprises approximately 17,373 acres.

5. The Township Comprehensive Plan explains that the area encompassing the AP District was established as follows:
 This category encompasses those areas identified in the survey work for this plan as farmland, areas with natural features limitations and vacant land composed of no more than 20 acres. The Agricultural Preservation Area is situated away from public facilities and consists of large farm holdings, a concentration of properties covenanted under Act 319 as well as the township's Agricultural Security Area. Specific farmland policies are recommended for this area so that preservation techniques can be developed to protect the agricultural land base.
 R.R. 2412a.

districts, which had allowed for the development of single-family detached dwellings on lots of 80,000 square feet, and a scenic district, which had allowed for the development of single-family detached dwellings on two-acre minimum lots. *See* R.R. 179a, 273a. The Ordinance, however, then provides for the expansion of the R–3 Residential District to include approximately 254 additional acres, 228 of which would be available for development, as a means of accommodating future needs for the development of single-family, multi-family, and mobile homes within the Township. R.R. 2472a, 2477a.[6]

In the AP District, a landowner's ability to subdivide or develop his tract of land is restricted based on the size of the tract at the time of the amended Zoning Ordinance's adoption. A landowner of a tract of land containing ten acres or less may, without restriction, subdivide and develop his land into lots of 80,000 square feet. On the other hand, a landowner of a tract containing more than ten acres cannot subdivide or develop his land until he performs an analysis of the soil on the tract. Pursuant to the analysis, the landowner must identify those portions of the tract that qualify as prime farmland, farmland of statewide importance, and farmland of local importance.[7] The landowner must then set aside for agricultural uses and not develop or subdivide sixty percent of

---

**6.** In the Township Comprehensive Plan, the Commission states that based on projections of the Township's future growth, the size and state of the R–3 Residential District under the invalid Zoning Ordinance was large enough to accommodate the Township's needs for future housing until the year 2010. R.R. 2413a, 2472a. Nevertheless, the Commission concluded that because, under the invalid zoning ordinance, there was only a small percentage of land permitted specifically for multi-family development in the R–3 District, the R–3 District should be expanded to allow for such development. R.R. 2472a.

Considering this addition of land to the R–3 District, the ZHB found that 524.29 acres would be available for development in the district and that a total of 1,692 units could be built on that land. ZHB Decision, at 13.

**7.** These categories are based on the soil classifications compiled by the Soil Conservation Service of the United States Department of Agriculture. Prime farmland is defined in the amended Zoning Ordinance as land consisting of Class I and some Class II type soils and the "land best suited for producing food, feed, forage, fiber and oilseed crops, and also available for these uses." Ord. 118, Art. II, § 216(a), R.R. 2563a.

the tract that qualifies as prime farmland and fifty percent of the tract that qualifies as farmland of statewide importance and/or farmland of local importance ("non-buildable site area").[8] On that portion of land available for development ("buildable-site area"), the landowner may only develop single-family residences on lots containing at least one contiguous acre, *i.e.*, 43,560 square feet. No portion of the one-acre lot may include watercourses, floodplains, floodplain soils, wetlands, lakes, or ponds.[9] Moreover, in developing a residence on a lot, a landowner must allow for a contiguous building envelope of 10,000 square feet around the residence and within the lot's borders in order to provide a sufficient area for the possible addition of a driveway, patio, yard, or other alterations.[10]

Farmland of statewide importance is defined as land containing Class III type soils and those Class II soils that do not qualify as prime farmland. Ord. 118, Art. II, § 216(b), R.R. 2563a. Farmland of local importance is defined as land containing Class IV type soils and soils selected by Bucks County as important for the production of food, feed, fiber, forage, and oilseed crops. Ord. 118, Art. II, § 216(c), R.R. 2564a. In the Township, 4.3% of the land is prime farmland, 66.3% is land of statewide importance, and 11% is land of local importance. ZHB Decision, 10/18/99, at 8.

8. The set aside area must consist of a contiguous area that shall not be less than 300 feet in length, width, or any other dimension. Moreover, there must be a buffer zone in between the agricultural area and residential lots. Ord. 118, Art. III, § 408(C), R.R. 2571–72a.

The amended Zoning Ordinance also provides that a landowner may make any one of the following arrangements for the non-buildable site area: "1) fee-simple dedication to the Township, which the Township may refuse; 2) transfer to a private conservation organization that will continue to make the land available for agricultural activities; 3) transfer to [a private individual or organization] with the agreement that the land is intended for agricultural activities and/or protecting natural resources and shall not be subdivided or developed; and 4) [transfer to] a homeowners association, which shall be encouraged to make the area available for an agricultural enterprise." Commw. Ct. Op., 4/20/01, at 3–4; Ord. 118, Art. VI, § 626(2), R.R. 2581a.

9. However, twenty percent of the lot may contain areas of wetland margins or lake and pond shorelines. Additionally, woodlands, steep slopes, farmland and agricultural soils that are not part of the non-buildable site area may be included in the one-acre lot. Ord. 118, Art. IV, § 408(B)(2)(d), R.R. 2570a.

10. "The building envelope shall not include the area of any required setbacks, (except for driveways which would cross yards), buffer yards,

Prior to the Board's adoption of Resolution 96–02 declaring the Township's existing Zoning Ordinance invalid and directing the Commission to amend the ordinance, Appellant entered into sales agreements with several landowners to purchase five tracts of land, containing a total of 199.9 acres in the Township.[11] On the 199.9 acres, Appellant planned to create two separate planned residential developments named Pennland Farms East and Pennland Farms West.[12] Appellant intended to develop 210 single-family homes in Pennland Farms East and 251 single-family homes in Pennland Farms West.[13] However, as a result of the zoning changes effected by the amended Zoning Ordinance, Appellant is now foreclosed from developing the 199.9 acres as planned. All of the 199.9 acres equitably owned by Appellant are included in the Township's AP District, and according to Appellant, because of the limitations on development in the AP District, it may only develop 25 single-family homes in the area it planned to call Pennland Farms East and 32 single-family homes in the area it planned to call Pennland Farms West.

On August 20, 1996, Appellant filed a substantive challenge with the Township Zoning Hearing Board ("ZHB") regarding the validity of the amended Zoning Ordinance. Appellant argued that the provisions in the Ordinance requiring that a landowner of a tract containing more than ten acres in the AP District set aside and perpetually restrict from development between fifty and sixty percent of his tract were unreasonable

natural features with one hundred (100) percent protection standard and the portion of those natural features that may not be developed or intruded upon as specified in Section 602 Environmental Performance Standards." Ord. 118, Art. II, § 208(a), R.R. 2563a.

11. According to the record, Appellant remains the equitable owner of the 199.9 acres.

12. Pennland Farms West has a base site of 131.5 acres, 26.2 of which contains floodplains, floodplain soils, wetlands, lakes, and ponds, while Pennland Farms East has a base site of 79.2 acres, 4.1 of which contains floodplains, floodplain soils, wetlands, lakes and ponds. R.R. 2781a–84a.

13. Appellant planned to build single-family homes on 10,000 square foot lots, resulting in a density of approximately 2.6 units per acre. R.R. 878a–82a.

and therefore, should be declared invalid. In addition, Appellant claimed that the provisions in the Ordinance restricting the degree of development on the buildable site area were unreasonable and therefore, should also be deemed invalid. Between September 16, 1996 and September 20, 1999, the ZHB held a series of 29 hearings regarding Appellant's challenge. Throughout the hearings, the Board asserted that the Ordinance was valid. However, a month prior to the conclusion of those hearings, the Board, pursuant to its authority under Section 609.2 of the MPC, adopted Resolution 99–07, in which it questioned the validity of the Ordinance. In Resolution 99–07, the Board stated that it had resolved that:

1. The Bedminster Township Zoning Ordinance, as amended, *may be substantively invalid.*

2. The possibly invalidity of the Zoning Ordinance consists of an inconsistency in various agricultural uses which are permitted in the AP Zoning District, the impact of the Table of Dimensional Requirements and the Environmental Performance Standards of the Ordinance throughout the various zoning districts, and the possible lack of available land for those zoning purposes set forth at Section 604(3), (4), and (5) of the Municipalities Planning Code.

3. The Bedminster Township Planning Commission is hereby directed to prepare and consider a curative amendment amending the Bedminster Township Zoning Ordinance so as to cure the declared potential invalidity.

Resolution 99–07 (emphasis added), R.R. 2812a–13a.

On October 18, 1999, the ZHB issued a decision denying Appellant's challenge to the Ordinance. The ZHB found that the evidence admitted during the hearings established that there is a viable agricultural industry in the Township and that the Township had a legitimate interest in preserving its agricultural lands, which was expressed by the Township in its Comprehensive Plan. The ZHB then concluded that the regulations in the Ordinance limiting development in the AP District were a reasonable means of accomplishing the Town-

ship's interest in preserving its agricultural lands.[14] Accordingly, the ZHB determined that Appellant had failed to meet its burden of establishing that the Ordinance was constitutionally invalid. The ZHB also noted that in making its decision to sustain the Ordinance, it did not place any weight on the Board's adoption of Resolution 129, because the Resolution did not definitively declare the Ordinance invalid. On appeal, both the trial court and Commonwealth Court affirmed the ZHB's decision. Appellant appealed from the Commonwealth Court's decision to this Court and we granted allocatur.

In its appeal, Appellant contends that after taking into account the Ordinance's requirement that a landowner of a tract containing more than ten acres of land in the AP District set aside and permanently restrict from development at least fifty percent of his land, its requirement that a landowner only build residences on the buildable area of his tract on lots that are a minimum size of one acre (which, in turn, may not contain watercourses, floodplains, etc.), and its requirement that a landowner include a building envelope of 10,000 square feet surrounding each residence, the Ordinance limits a typical landowner of a tract greater than ten acres located in the AP District to developing approximately one single-family home per approximately every three acres, *i.e.*, a density limitation of one unit per every three acres. Appellant then argues that this is an unreasonably low density limitation and such a limitation cannot be sustained unless the Township demonstrates that the limitation is supported by an extraordinary public interest justification. According to Appellant, such a rule is mandated by this Court's decision in *Concord Twp. Appeal*, 439 Pa. 466, 268 A.2d 765 (1970), as well as a series of decisions by the Commonwealth Court, namely, *Martin v. Twp. of Millcreek*, 50 Pa.Cmwlth. 249, 413 A.2d 764 (1980), *Mill Valley Assoc. v. Zoning Hearing Bd. of Tredyffrin Twp.*, 126 Pa.Cmwlth. 340, 559 A.2d 985 (1989), *Berman v. Bd. of*

14. The ZHB acknowledged that the restrictions in the Ordinance made it economically unprofitable for Appellant to develop the 199.9 acres. Nevertheless, the ZHB found that the Ordinance need not be drafted in order to further developers' desires to make a maximum profit from development in the Township. ZHB Decision, 10/18/99, at 21.

14

*Commissioners of Twp. of Lower Merion,* 147 Pa.Cmwlth. 405, 608 A.2d 585 (1992), and *Reimer v. Bd. of Supervisors of Upper Mount Bethel Twp.,* 150 Pa.Cmwlth. 323, 615 A.2d 938 (1992). We disagree, however, that an extraordinary justification standard is applicable here.

In reviewing the decision of a zoning hearing board where the trial court has not taken any additional evidence, as in the instant case, appellate review is limited to determining whether the board abused its discretion or committed a legal error. *Crown Communications v. Zoning Hearing Bd. of Glenfield* 550 Pa. 266, 705 A.2d 427, 430 (1997). Property owners have a constitutionally protected right to enjoy their property. U.S. Const. amends. V, XIV; Pa. Const. art. 1, § 1; *Cleaver v. Bd. of Adjustment,* 414 Pa. 367, 200 A.2d 408, 411 (1964). That right, however, may be reasonably limited by zoning ordinances that are enacted by municipalities pursuant to their police power, *i.e.,* governmental action taken to protect or preserve the public health, safety, morality, and welfare. *Cleaver,* 200 A.2d at 411–12 ("it is well settled that [the] Constitutionally ordained right of property is and must be subject and subordinated to the Supreme Power of Government—generally known as the Police Power—to regulate or prohibit an owner's use of his property"). Where there is a particular public health, safety, morality, or welfare interest in a community, the municipality may utilize zoning measures that are substantially related to the protection and preservation of such an interest. *National Land and Investment Co. v. Easttown Twp. Bd. of Adjustment,* 419 Pa. 504, 215 A.2d 597, 607 (1966); *see also* 53 P.S. § 10603(a) (zoning ordinance should reflect the needs of the citizens and the suitability and specific nature of particular parts of the municipality).

Under the traditional standard applied when determining the validity of zoning ordinances, a zoning ordinance must be presumed constitutionally valid unless a challenging party shows that it is unreasonable, arbitrary, or not substantially related to the police power interest that the ordinance purports to serve. *Euclid, Ohio v. Ambler Realty Co.,* 272

U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *BAC, Inc. v. Bd. of Supervisors of Millcreek Twp.*, 534 Pa. 381, 633 A.2d 144, 146–47 (1993); *Hopewell Twp. Bd. of Supervisors v. Golla*, 499 Pa. 246, 452 A.2d 1337, 1341–42 (1982); *National Land and Investment Co.*, 215 A.2d at 607; *Schubach v. Silver*, 461 Pa. 366, 336 A.2d 328, 335 (1975); *see also Cleaver*, 200 A.2d at 412; *Bilbar Construction Co. v. Bd. of Adjustment of East-town Twp.*, 393 Pa. 62, 141 A.2d 851, 855–56 (1958). Among other reasons, an ordinance will be found to be unreasonable and not substantially related to a police power purpose if it is shown to be unduly restrictive or exclusionary. *See National Land and Investment Co.*, 215 A.2d at 612 (an ordinance that has an exclusionary result or purpose cannot be substantially related to the general welfare); *Hopewell Twp.*, 452 A.2d at 1343; *see also Surrick v. Zoning Hearing Bd. of Twp. of Upper Providence*, 476 Pa. 182, 382 A.2d 105, 108 (1978). Similarly, an ordinance will be deemed to be arbitrary where it is shown that it results in disparate treatment of similar landowners without a reasonable basis for such disparate treatment. *Hopewell Twp.*, 452 A.2d at 1343–44. Moreover, in reviewing an ordinance to determine its validity, courts must generally employ a "substantive due process inquiry, involving a balancing of landowners' rights against the public interest sought to be protected by an exercise of the police power." *Hopewell Twp.*, 452 A.2d at 1342. As explained further by this Court in *Hopewell Twp.*,

> [Courts] must engage in a meaningful inquiry into the reasonableness of the restriction on land use in light of the deprivation of landowner's freedom thereby incurred. A conclusion that an ordinance is valid necessitates a determination that the public purpose served [by the ordinance] adequately outweighs the landowner's right to do as he sees fit with his property, so as to satisfy the requirements of due process.

*Id.*

In *Concord Twp. Appeal*, the primary case on which Appellant relies in arguing that an extraordinary justification standard rather than the traditional standard is applicable here,

this Court reviewed the validity of Concord Township's zoning ordinance requiring that homes be built on a minimum lot size of two acres if the land bordered a roadway and a minimum lot size of three acres if the land did not border a roadway. In an Opinion Announcing the Judgment of the Court,[15] Justice Roberts noted that while minimum lot size requirements may be justified in certain circumstances, "[a]t some point along the spectrum ... the size of lots ceases to be a concern requiring public regulation and becomes simply a matter of private preference." 268 A.2d at 766 (citing *National Land and Investment Co.*, 215 A.2d at 608). Justice Roberts implied that when minimum lot size requirements are too large, they merely become a means to accomplish an improper exclusionary purpose or result. Id. Justice Roberts then observed that because "a house can fit quite comfortably on a one acre lot without being the least bit cramped," minimum lot sizes of two acres or more are "a great deal larger than what should be considered as a necessary size for the building of a house and are therefore, not the proper subjects of public regulation." *Id.* at 767. Given these observations, Justice Roberts concluded that a zoning ordinance with a minimum lot size restriction of two acres or more is unreasonable and invalid unless the municipality that enacted the regulation can show that it is supported by an extraordinary justification. Id. Applying this standard to the case before him, Justice Roberts determined that because Concord Township could not show that the minimum lot size requirements in its zoning ordinance were supported by an extraordinary justification, Concord Township's zoning ordinance was invalid.[16] *Id.* at 770.

As Appellant points out, the Commonwealth Court has treated Justice Roberts' endorsement of an extraordinary

**15.** This Opinion was authored by Justice Roberts, and joined by Justices Eagen and O'Brien.

**16.** Concord Township argued that the minimum lot size restrictions in its zoning ordinance were necessary to ensure proper sewage disposal in the Township. Justice Roberts determined, however, that the minimum lot size restrictions could not be supported by the Township's concerns for sewage disposal because the Township could regulate sewage disposal by less restrictive means. *Id.* at 767–68, 770.

justification standard as a holding of this Court. However, *Concord Twp. Appeal* has never been binding precedent on the Commonwealth Court because four of the seven Justices did not join Justice Roberts' lead opinion. Chief Justice Bell filed a concurring opinion, in which he agreed with the lead opinion that Concord Township's zoning ordinance was invalid, but did so on the ground that the ordinance was not substantially related to a police power purpose, rather than on the ground that the Township had not met the newly-formulated extraordinary justification standard. *Id.* at 771–72. Justice Jones filed a dissenting opinion, in which he explicitly rejected the new standard. In his dissenting opinion, joined by Justice Cohen, Justice Jones recognized that the standard that had been well-established through prior case law for determining the validity of zoning ordinances was that the ordinance was presumed valid unless a challenging party shows that it is unreasonable, arbitrary, or not necessary to a police power purpose. *Id.* at 774–75 (citing *National Land and Investment Co.*, 419 Pa. 504, 215 A.2d 597; *Cleaver*, 414 Pa. 367, 200 A.2d 408; *Colligan Zoning Case*, 401 Pa. 125, 162 A.2d 652, 654 (1960)). Citing that standard as the proper one, Justice Jones stated that because he believed that the evidence had established that Concord Township had a legitimate interest in ensuring proper sewage disposal and that the minimum lot size restrictions in the Township's zoning ordinance were substantially related to that interest, he would find that the Board neither abused its discretion nor committed an error of law in sustaining the Township's zoning ordinance. *Id.* at 777–78.

Likewise, Justice Pomeroy, in a second dissenting opinion, which was joined by Justice Jones, made clear that he also disagreed with the extraordinary justification standard announced by the lead opinion.[17] *Id.* at 778–792. Applying the traditional test, Justice Pomeroy opined that Concord Township's zoning ordinance was valid as the evidence showed that

17. Justice Pomeroy found that under the extraordinary justification standard, a municipality would never be able to create a minimum lot size restriction greater than one acre. *Id.*

the ordinance's minimum lot size restrictions were substantially related to the police power purposes advanced by the Township and the appellee had failed to sustain its burden of showing that the restrictions were unreasonable, arbitrary, or not substantially related to the Township's police power purposes. *Id.* at 779–80.

Therefore, while the lead opinion in *Concord Twp. Appeal* stated that a zoning ordinance that requires that residences be built on a minimum lot size of two acres or more is invalid unless the municipality that enacted the ordinance can establish an extraordinary justification for the minimum lot size restriction, that extraordinary justification standard was simply not adopted by a majority of the Court.[18] *See Hess v. Upper Oxford Twp.*, 17 Pa.Cmwlth. 399, 332 A.2d 836, 838 (1975). As such, it is clear that the Commonwealth Court has erred in the cases on which Appellant relies in treating the extraordinary standard as having been adopted by a majority of this Court and as the established law in this Commonwealth. *See Commonwealth v. Covil*, 474 Pa. 375, 378 A.2d 841, 844 (1977) (while majority of Justices on Pennsylvania Supreme Court agreed with position in lead opinion that defendant was entitled to jury instruction, majority of Justices did not agree with harmless error analysis in lead opinion and therefore, harmless error analysis had no precedential value and was not binding on lower courts); *see also In re O.A.*, 552

18. Indeed, it appears that a majority of the Court actually found that a zoning ordinance, such as Concord Township's, which mandates that residential development occur on minimum lot sizes of two acres or more, must be treated like any other zoning ordinance and therefore, presumed valid unless a challenging party can establish that it is unreasonable, arbitrary, or not substantially related to a police power purpose. As stated above, the three dissenting Justices specifically rejected the extraordinary justification standard announced by the lead opinion in favor of the general standard applied to all other zoning ordinances. *Id.* at 772–80. While Chief Justice Bell, in his concurring opinion, did not explicitly state that he believed that the standard applied to other zoning ordinances was the appropriate standard to use in reviewing zoning ordinances mandating minimum lot sizes of two acres or more, his concurring opinion seems to imply as such, particularly given that he cited and relied on cases that applied the traditional standard. *Id.* at 772 (citing *Cleaver*, 414 Pa. 367, 200 A.2d 408; *Eller v. Bd. of Adjustment*, 414 Pa. 1, 198 A.2d 863).

Pa. 666, 717 A.2d 490, 496 n. 4 (1998); *Commonwealth v. Davenport*, 462 Pa. 543, 342 A.2d 67, 75 n. 3 (1975).[19] Moreover, we decline to declare such a standard to be the law here, when neither the lead opinion in *Concord Twp. Appeal* nor the parties here have articulated any compelling reasons for such a standard and we are far from convinced that it is necessary to shift the burden of proof onto municipalities to establish an extraordinary justification for minimum lot size restrictions, even when those restrictions mandate lot sizes of two acres or more.[20] Indeed, we are aware of no basis on which to conclude that requiring a challenging party to show that a minimum lot size, like any other zoning restriction, is unreasonable, arbitrary or not substantially related to the police power purpose, is inadequate to protect property rights or "so onerous as to foreclose, for all practical purposes, a landowner's avenue of redress against the infringement of constitutionally protected rights." *National Land and Investment Co.*, 215 A.2d at 607. Thus, while we agree with the sentiments expressed in the lead opinion in *Concord Twp. Appeal* that minimum lot sizes of two acres or more can be both unreasonable and exclusionary, we cannot conclude that any improper

**19.** The extraordinary justification standard has also not been adopted or applied by this Court since *Concord Twp. Appeal. See e.g., Hopewell Twp.*, 452 A.2d at 1341–44; *Surrick v. Zoning Hearing Bd. of Twp. of Upper Providence*, 476 Pa. 182, 382 A.2d 105 (1978). While in *Appeal of Elocin*, 501 Pa. 348, 461 A.2d 771, 772 (1983), a plurality of this Court stated that the Court had previously held in *Concord Twp. Appeal* that minimum lot size restrictions greater than two acres are invalid absent a showing of an extraordinary justification by the municipality, that statement was simply dicta and the reasoning of that decision, like *Concord Twp. Appeal*, was not adopted by a majority of this Court. Furthermore, because a majority of the Justices in *Concord Twp. Appeal* did not adopt the extraordinary justification standard, the plurality opinion's statement in *Appeal of Elocin* that the extraordinary justification standard was a holding by the Court in *Concord Twp. Appeal* was a misinterpretation of that decision.

**20.** As this Court explained in *National Land and Investment Co.*, "a presumption of validity attaches to a zoning ordinance" to ensure that zoning power remains in the hands of the government, with the court merely acting as a "judicial overseer," "drawing the limits beyond which local regulation may not go, but loathing to interfere, within those limits, with the discretion of local governing bodies." 215 A.2d at 606–07.

purpose served by such restrictions cannot be addressed and remedied under the traditional standard of review.

Furthermore, even assuming *arguendo* that *Concord Twp. Appeal*'s extraordinary justification standard was the law, it would not be applicable here, because the standard was only meant to apply in cases involving minimum lot sizes of two acres or more, whereas here, the Ordinance requires a minimum lot size of just one acre. While Appellant recognizes this distinction, it nonetheless argues that the extraordinary justification standard should apply because the Ordinance *results in* a density limitation of one house per every two acres or more. However, we find no support for such an argument in *Concord Twp. Appeal.* To the contrary, the lead opinion in that case speaks only about minimum lot sizes *per se,* and in no way suggests that an extraordinary justification standard should apply any time a zoning regulation merely results in lot sizes of two acres or more. Moreover, the Commonwealth Court cases following *Concord Twp. Appeal* never interpreted the lead opinion to have such a broad effect. Thus, even if the extraordinary justification standard as set forth in the lead opinion in *Concord Twp. Appeal* were the law in this Commonwealth, that standard would be inapplicable on the facts presented here.

Accordingly, we find that in the present case, the lower courts properly determined that the Township did not have to establish an extraordinary justification for the Ordinance to be deemed valid, and that, instead, the Ordinance was presumed valid unless Appellant showed that it was unreasonable, arbitrary, or not substantially related to the Township's police power interests. Applying that traditional test here, however, we agree with Appellant that the lower courts erred in finding that the restrictions in the Ordinance were reasonable and substantially related to the Township's general welfare interest in preserving its agricultural land.

As noted above, Appellant essentially argues that the Ordinance's restrictions on the development of tracts containing greater than ten acres in the AP District, when considered as

a whole, are unreasonable because they ultimately restrict landowners of such tracts to developing approximately one home per every three acres. In support of its argument, Appellant explains that because virtually all of the land in the AP District that is not wetlands, floodplains, or steep slopes, is either prime farmland, farmland of statewide importance, or farmland of local importance, a landowner in the AP District essentially must set aside fifty percent of his land for agricultural purposes as a result of the Ordinance's set aside provisions. Furthermore, according to Appellant, the set aside requirement is not substantially related to the Township's interest in preserving agriculture, but rather is meant to serve the Township's desire to maintain open space and to preserve its bucolic character. Finally, Appellant asserts that even if such a large set aside requirement is found to be reasonable and substantially related to the Township's interest in preserving its agricultural lands, the additional restrictions placed by the Ordinance on the buildable site area, *e.g.,* the one-acre minimum lot size, are unreasonable and not substantially related to the Township's interest in preserving its agricultural land because they concern that area of the tract already designated as "buildable."

It is well-established in this Commonwealth that municipalities may utilize zoning ordinances in order to protect prime agricultural land and encourage agricultural activity. *See* 53 P.S. §§ 10603(b)(5), (c)(7), (g)(1); 10604(3); *Boundary Drive Assoc. v. Shrewsbury Twp.,* 507 Pa. 481, 491 A.2d 86, 91 (1985). Municipalities may also utilize zoning ordinances in order to regulate the:

(1) Uses of land, watercourses and other bodies of water.

(2) Size, height, bulk, location, erection, construction, repair, maintenance, alteration, razing, removal and use of structures.

(3) Areas and dimensions of land and bodies of water to be occupied by uses and structures, as well as areas, courts, yards, and other open spaces and distances to be left unoccupied by uses and structures.

(4) Density of population and intensity of use.

(5) Protection and preservation of natural and historic resources . . .

53 P.S. § 10603(b). Zoning regulations, however, must still be based on a public health, safety, morality, or welfare interest expressed by the community. *Id.* §§ 10603(a); 10606. In addition, the regulations must be reasonable, non-arbitrary, and substantially related to that interest expressed by the municipality. *See Boundary Drive*, 491 A.2d at 91–93; *Hopewell Twp.*, 452 A.2d at 1343–44.

Here, a review of the record indicates that the land in the Township is currently used primarily for agriculture. R.R. 247a, 284a–85a, 618a, 886a, 1148–49, 1434a, 1470a; *see also* Township Comprehensive Plan, 1996, R.R. 2433a–34a (1990 study of land uses in Township showing that greatest percentage of land used for agricultural purposes), *Heritage Building Group, Inc. v. Bedminster Twp. Bd. of Supervisors*, 742 A.2d 708, 710–11 (Pa.Commw.2000) (finding that Township not in path of population growth); *but see* R.R. 986a–95a (testimony by professional planner hired by Appellant that agricultural has a very strong presence within the Township, but is not the principal land use). However, there was also evidence introduced during the ZHB hearings that in recent years farmland has been lost throughout Bucks County, including in the Township. R.R. 937a, 1420a–21a. As a result of this loss, the Township has emphasized in its Comprehensive Plan that the preservation of its agricultural lands and activities is an important goal of the Township. Township Comprehensive Plan, 1996, R.R. 2412a, 2420a–21a, 2443a–48a. In light of this evidence, which indicates that the land in the Township is predominantly used for agricultural purposes at the present time and that the Township has expressed a general welfare interest in keeping its agricultural lands and activities from being lost, we agree with the lower courts that the ZHB properly determined that the Township may enact, pursuant to its police power, zoning regulations to preserve its agricultural lands and activities.

 Nevertheless, upon our review of the evidence, we find that the ZHB abused its discretion in finding that the Ordinance's provisions regarding the AP District are reasonable and substantially related to the Township's interest in preserving its agricultural lands and activities. The restrictions placed by the Ordinance on a landowner of a tract containing greater than ten acres in the AP District must be looked at as a whole, and when considered as such, we agree with Appellant that they unreasonably infringe upon a landowner's constitutionally protected right to freely use and enjoy his property. While the Township undoubtedly has an interest in preserving its agricultural lands, that interest does not completely outweigh a landowner's right to use his property as he sees fit. *See Hopewell Twp.*, 452 A.2d at 1343–44.

Clearly, the set aside restrictions in the Ordinance are related to the Township's interest in preserving its agricultural lands as they (1) are directly based on the amount of soils recognized by the federal, state, and local governments as agriculturally productive,[21] (2) require a sufficient amount of those soils to be set aside to ensure that the land may be used for farming, and (3) require the land that is set aside to be used or maintained for agricultural purposes.[22] Moreover, when viewed alone, the Ordinance's set aside restrictions also appear to reasonably balance the Township's interest in preserving its agricultural lands and activities with a landowner's interest in using his property as he desires, given that the

21. While Appellant also argues that the Ordinance's set aside requirement is unreasonably large because it includes soils that are not agriculturally productive, specifically farmland of local importance, we find that the evidence indicates that farmland of local importance is valuable farmland and therefore, may be preserved as such. R.R. 385a, 493a, 1707a, 1563a–65a, 1575a–76a, 1585a–86a; 1662a–63a, 1890a; *see also Boundary Drive*, 491A.2d at 88–89.

22. We disagree with Appellant's assertion that the Township's sole motivation for enacting the Ordinance was to maintain, "a bucolic, largely undeveloped rural residential enclave, free of growth pressure." Appellant's Brf. at 10. Given that the Township is currently predominantly used for agricultural purposes and that the Ordinance specifically directs that the land that is set aside be put towards agricultural purposes, we do not find that the Township enacted the Ordinance solely as a means of preserving its bucolic character.

24

regulations direct a landowner seeking to subdivide or develop his tract to set aside approximately fifty percent of the tract for agricultural purposes,[23] yet also permit a landowner to develop or subdivide that land which remains. Indeed, the Township seemed to want to reach such a reasonable balance in creating the Ordinance. Catherine Guathier, a member of the Bucks County Planning Commission who assisted the Township Commission with the preparation of its undated Comprehensive Plan and the Ordinance, testified during the ZHB hearings that in establishing the Ordinance, the Commission chose not to adopt the zoning schemes used by Lancaster and York Counties in order to preserve their agricultural lands because there are greater developmental pressures in the Township than in Lancaster and York, and accordingly, the Commission did not want to completely foreclose a landowner from developing his property. R.R. 194a; *see also* R.R. 1702a–03a. Further, Ms. Guathier testified that the Commission recognized that "a farmer [may need] to subdivide off a couple lots in order to make some money and make the farm economical for family members," and therefore, they wanted to ensure that a farmer had that option. R.R. 296a–98a; *see also* R.R. 1700a–01a. Ron Dise, the chairman of the Commission, also stated that in creating the set aside restrictions, the Commission realized that they "were dealing with a person's single largest asset, so we wanted to proceed with that in mind and to try to maintain some fairness." R.R. 1700a; *see also* 1744a–45a.

However, while the Commission may have intended to achieve a reasonable balance between its interest in preserving its agricultural lands and activities and a landowner's right to use his property as he pleases, the Ordinance fails to obtain

**23.** We agree with Appellant that because essentially all of the AP District that is not wetlands, floodplains or steep slopes, consists of either prime farmland, farmland of statewide importance or farmland of local importance, a typical landowner of tracts containing more than ten acres in the AP District must set aside at least fifty percent of his tract. Indeed, this was recognized by the Township in requiring such a set aside restriction. R.R. 1806a; *see also* R.R. 196a, 1741a (testimony by those involved in establishment of the Ordinance that at least five acres was necessary for a good, farmable piece of property).

such a reasonable balance. After complying with the Ordinance's set aside restrictions, a landowner is left with using only approximately half of his initial tract for subdivision or development purposes. *See* n. 22, *supra.* A portion of that remaining tract, however, contains areas not suitable for development, such as wetlands, floodplains, or steep slopes. The Ordinance then further restricts a landowner on the area that remains open for development to building single-family homes on a minimum size of one acre, which is free of watercourses, floodplains, floodplain soils, wetlands, lakes, or ponds. We find that these restrictions, when required in addition to the set aside restrictions, not only unduly limit a landowner's ability to sell, subdivide, or develop that portion of his tract left over to him,[24] but also do not have a substantial relationship to the Township's interest in preserving its agricultural lands and activities or any other general welfare interest of the Township.

According to Mr. Dise, the Commission chose to create a minimum lot size restriction of one acre because they had seen "some things that looked like very large houses on very small lots that we just didn't think was the character of Bedminster and wasn't the kind of thing that we thought made a good development."[25] R.R. 1784a–85a. Mr. Dise further explained that a size of one-acre was chosen as follows:

> That kind of grew out of the professionals' concerns that if that is what you [the Planning Commission] are going to do

24. It is undisputed by the parties that it is difficult for a landowner after setting aside half of his tract to develop just a few homes on the remainder of the tract due to the need to develop an expensive septic system for those homes. R.R. 430a, 645a–56a, 694a, 738a, 1774a–75a; *see also* R.R. 1592a–1600a. It is simply more economical for a landowner to develop a greater number of homes on the land set aside for development because the cost of the septic system can be better distributed among the homes. R.R. 870a–76a, 973a–74a.

25. Mr. Dise also testified that in his personal opinion, the one-acre minimum lot size requirement was an effective way to prevent the creation of "small towns," which did not, in his view, "make sense to have within the AP district." R.R. 1787a–89a. Mr. Dise did not testify, however, that this view was shared by the other members of the Commission and thus, we do not consider the suppression of towns to be one of the Township's motivations for enacting the one acre limit here.

... and from looking around at some other areas in an AP District[,] the one acre lot size kind of made sense to us and we knew—one acre seemed like a good number and it came from the professionals saying well, you may be restricting the envelope and whatever so hence the concept of 'one good acre' which has to be free of certain natural features.

R.R. 1710a; *see also* R.R. 1742a–43a ("we felt that the one acre was a good number"). Given this testimony, it appears that the one-acre minimum lot size requirement was adopted merely because it was considered a "good number" and a number that would stall the development of large houses on small lots. Indeed, the Township clearly recognized that a one-acre minimum lot was not necessary for the development of a single-family detached dwelling, as the Ordinance allows for a minimum lot size of as low as 8,000 square feet in the performance subdivision area of the R 3 Residential District. *See* Ord. 118, Table of Dimensional Regulations, R.R. 2574a; 959a, 968a; *see also* R.R. 1702a (Mr. Dise stating that Commission considered lot sizes of 10,000 or 20,000 square feet when planning Ordinance).

This Court has stated that in every zoning matter, depending upon the land involved and the circumstances presented, there is a "point along the spectrum" when "the size of lots ceases to be a concern requiring public regulation and becomes simply a matter of private preference." *National Land and Investment Co.*, 215 A.2d at 608. In general, when a minimum lot size requirement is motivated solely by a concern that "a small number of lovely old homes will have to · start keeping company with a growing number of smaller, less expensive, more densely located houses," it exudes an exclusionary purpose, which does not foster or promote the general welfare. *Id.* at 612; *see Concord Twp. Appeal*, 268 A.2d at 766–72.[26] Where, as here, the Board has not articulated any

26. As discussed above, the lead opinion in *Concord Twp. Appeal* stated that a home can fit quite comfortably on a one-acre minimum lot and therefore proposed a heightened standard of review for minimum lot size requirements of two acres or more. However, this was by no means a blanket approval of minimum lot size requirements of one acre.

reasons for requiring landowners developing the "buildable site area" of their property to build homes on lots that are a minimum size of one acre beyond its belief that one acre was a "good number" which would forestall the development of large houses on small lots, we are compelled to ascribe an exclusionary purpose to that requirement. While we acknowledge that the Township has a legitimate interest in preserving its agricultural lands, we find that by requiring landowners of tracts greater than ten acres to set aside between fifty and sixty percent of the agriculturally productive land on their tracts, the Township reasonably meets that interest. By also limiting a landowner to developing homes on one-acre minimum lots on the buildable site area, however, the Township is no longer attempting to preserve agriculture, but rather, is improperly attempting to exclude people from the area and in so doing, is unreasonably restricting the property rights of the landowner.[27] Thus, as the Ordinance's minimum lot size requirement is an unreasonable restriction on a landowner's right to use his property and not substantially related to the Township's interest in preserving its agricultural lands, we find that the ZHB abused its discretion in sustaining the amended Zoning Ordinance as constitutionally valid.

For the foregoing reasons, we reverse the Commonwealth Court's order affirming the ZHB's decision and declare the Township's amended Zoning Ordinance constitutionally invalid.[28]

**27.** As this Court recognized in *National Land and Investment Co.,*
> [T]here is no doubt many of the residents are highly desirous of keeping [the community] the way it is, preferring, quite naturally, to look out upon land in its natural state rather than on other homes. These desires, however, do not rise to the level of public welfare. This is purely a matter of private desire which zoning regulations may not be employed to effectuate.

215 A.2d at 611. Thus, while some members of the Township may desire to keep homes on large plots of land and impede a large amount of people from moving into the AP District, such a desire is not a general welfare interest that can support the one acre minimum lot size restriction.

**28.** Appellant also argues on appeal to this Court that the Ordinance was invalid because the Board admitted its invalidity by adopting Resolution

99–07 pursuant to Section 609.2 of the MPC. According to Appellant, Section 609.2 is only applicable to situations where a municipality has determined that its zoning ordinance is substantively invalid, and cannot be casually invoked where the municipality thinks that an Ordinance *may* be invalid. Thus, Appellant asserts that the Board's enactment of Resolution 99–07, in which it questioned the validity of the Ordinance, must be construed as an unequivocal admission by the Township that the Ordinance is invalid. We agree with Appellant that Resolution 99–07 was not inconsequential to the ZHB's consideration of Appellant's challenge. Given that the legislature has designated the Board as the agency responsible for zoning measures in the Township and has also specifically directed the Board to pass resolutions by means of Section 609.2 declaring a zoning ordinance invalid when the Board finds that it is unreasonable or fails to reflect the interests of the Township, we find that the ZHB should have given some evidentiary weight to the Board's adoption of Resolution 99–07 pursuant to its authority in Section 609.2, and to that end, should have looked at a record of the Board's proceedings regarding its passage of Resolution 99–07. However, the Board's adoption of Resolution 99–07 after the commencement of the proceedings before the ZHB did not establish the Ordinance was invalid as a matter of law, especially in the instant case where the Board merely stated in Resolution 99–07 that the Ordinance may be invalid. *See Appeal of Marple Gardens*, 99 Pa.Cmwlth. 485, 514 A.2d 216, 221 (1986); *Sultanik v. Bd. of Supervisors of Worcester Twp.*, 88 Pa.Cmwlth. 214, 488 A.2d 1197, 1204–05 (1985).