### BRIAR MEADOWS DEVELOPMENT, INC., Appellant

v.

### SOUTH CENTRE TOWNSHIP BOARD OF SUPERVISORS.

### Briar Meadows Development, Inc.,

v.

### South Centre Township Zoning Hearing Board.

### Appeal of: Laura Baker.

Commonwealth Court of Pennsylvania.

Argued June 21, 2010.

Decided Aug. 18, 2010.

---

Donald G. Karpowich, Drums, for designated appellant, Briar Meadows Development, Inc.

Linus E. Fenicle, Camp Hill, for appellee, South Centre Township Board of Supervisors.

BEFORE: COHN JUBELIRER, Judge, and BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Briar Meadows Development, Inc. (Briar) appeals from an order of the Court of Common Pleas of the 26th Judicial District (Columbia County Branch) (trial court) which denied Briar's curative amendment request. We affirm.

On July 13, 2007, Briar filed a curative amendment application with the South

Centre Township Board of Supervisors (Board). Briar sought to rezone certain property in South Centre Township (Township) from Agricultural to Commercial/Industrial. Briar holds an option on two tracts of land in the Township. The properties are bounded to the north by Interstate 80 and to the east by an adjoining property owner and the Interstate 80 exit ramp. To the south, the property is bordered by property owned by Laura Baker (Baker) and State Route 11, and to the west by State Route 1003/Lows Road. The properties consist of one 33.89 acre parcel which is located entirely within the Agricultural Zoning district, and one 91.5 acre parcel which is located in both the Agricultural and Commercial Districts. Only 21% of the total site is located within the Commercial district. After a hearing, the Board issued a decision denying the curative amendment application.

Briar filed an appeal with the trial court. On June 3, 2008, the trial court granted Briar's motion for leave to present additional evidence and remanded the case to the Board to hold a *de novo* hearing pursuant to public notice, as that term is defined in the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202. The Board filed a petition for reconsideration of the trial court's June 3, 2008 order. The parties then entered into a stipulation, approved by the trial court, which stayed the proceedings to afford Briar an opportunity to apply for a use variance. The use variance was not approved, and according to the stipulation, Briar's request for a curative amendment was to proceed as directed by the trial court.

On October 9, 2008, the trial court issued an order amending its June 3, 2008 order and directing that a hearing be scheduled before the trial court for the purpose of taking additional testimony and presenting additional evidence, with such testimony and evidence not to be duplicative of any testimony or evidence previously presented at the hearing before the Board. The Board was directed to give notice of the hearing in accordance with the Ordinance and the MPC. The order further directed that the trial court judges were recusing themselves from further proceedings in the matter and directed the court administrator to have a visiting judge preside.

In another order dated October 9, 2008, the Northumberland County Court of Common Pleas was directed to handle the matter. Thereafter, a hearing was conducted by Judge Saylor on April 22, 2009, at which Briar introduced a plan showing that it intended to develop the properties into thirty building lots as part of a planned commercial center. Baker, an adjoining landowner, filed a petition to intervene in the curative amendment proceeding.

On July 31, 2009, Judge Saylor issued a decision and order denying Briar's curative amendment request and affirming the Board's decision. Judge Saylor also concluded that Baker's request to intervene in the matter was moot.

■ In its decision, the trial court observed that when considering a curative amendment, the question for the court to determine is the validity of the zoning ordinance. A zoning ordinance is presumed constitutional unless the challenging party shows it is unreasonable, arbitrary or not substantially related to the police power. *C & M Developers, Inc. v. Bedminster Township Zoning Hearing Board,* 573 Pa. 2, 820 A.2d 143 (2002). According to the trial court, Briar presented no evidence that would overturn the Ordinance on constitutional grounds. Instead of demonstrating a defect in the

Ordinance, Briar simply maintained that its proposed development was consistent with the comprehensive plan of the Ordinance, that it would not cause any harm, would naturally extend the Commercial zoning district and is reasonable. However, as stated by the trial court, these reasons do not in any way indicate a defect in the zoning ordinance which establishes the area as Agricultural. Briar appeals the trial court's order of July 31, 2009 to this court.[1]

Initially, Briar argues that the trial court, although directed to do so by previous court orders, did not conduct a *de novo* hearing.[2] Briar points to instances in the trial court's decision where it references the Board's prior decision and discusses its findings. Specifically, Briar points out that the trial court stated, "at the hearing before both the Board and the Court, Briar Meadows presented a number of pictures purporting to show the area in question." (R.R. at 23a.) Briar claims it was improper for the trial court to consider the Board's opinion.

The Board responds that the trial court submitted its own findings of fact and conclusions of law. The trial court followed the order which directed it to conduct a hearing and that no testimony or evidence was to be submitted that would be duplicative of what was previously presented at the Board's hearing. We agree that the prior testimony from the hearing before the Board was to be considered by the trial court and that the trial court did consider the testimony taken before the Board. Merely because the trial court referenced testimony that was presented

before it and the Board, it does not follow that the trial court failed to employ a *de novo* standard. As correctly stated by the board, the trial court issued its own findings of fact and conclusions of law.

■ Next, Briar maintains that the curative amendment is consistent with the comprehensive plan.

Initially, Briar recognizes that Section 303(c) of the MPC, 53 P.S. § 10303(c) states:

> Notwithstanding any other provision of this act, no action by the governing body of a municipality shall be invalid nor shall the same be subject to challenge or appeal on the basis that such action is inconsistent with, or fails to comply with, the provision of the comprehensive plan.

Despite the above, Briar maintains that this court has stated that, as a practical matter, many re-zonings occur upon the request of a landowner, and these re-zonings are not invalid, so long as they do not amount to spot zoning or special legislation, and they otherwise conform with the spirit of the comprehensive plan. *Raum v. Board of Supervisors of Tredyffrin Township*, 20 Pa.Cmwlth. 426, 342 A.2d 450 (1975).

Briar points to the testimony of Jack Varaly, a professional land use planner, who stated that the re-zoning of the subject properties from Agricultural to Commercial would not only be consistent with the comprehensive plan, but would also be in accordance with the community development objectives of the Ordinance.

---

1. Baker filed a cross appeal and later adopted the brief of the Board in its entirety. Thus, no separate issues have been raised by Baker warranting this court's review.

2. Where, as here, the trial court has taken additional evidence, our review is limited to

determining whether the trial court committed an error of law or abused its discretion. *Board of Commissioners of Ross Township v. Harsch*, 78 Pa.Cmwlth. 395, 467 A.2d 1183 (1983).

The Board responds that Briar filed its challenge on the basis that the Ordinance, which zones a certain part of the property Agricultural, is inconsistent with and fails to comply with the comprehensive plan. Based on the language contained in 53 P.S. § 10303(c), such a challenge may not be brought. We agree. In *CACO Three, Inc. v. Board of Supervisors of Huntington Township,* 845 A.2d 991 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 580 Pa. 707, 860 A.2d 491 (2004), this court addressed the status of a comprehensive plan in reviewing a lower court's disapproval of a preliminary land development plan. This court stated that while a comprehensive plan is a useful tool for guiding growth and development, it is by its nature, an abstract recommendation as to land utilization. Inconsistency with a comprehensive plan is not a proper basis for denying a land development plan. Similarly, it cannot be a basis for a substantive challenge to a zoning ordinance. Here, Briar filed its challenge on the basis that the Ordinance, which zones some of the property Agricultural, is inconsistent with and fails to comply with the comprehensive plan. As acknowledged by Briar, however, 53 P.S. § 10303(c) does not authorize such a challenge.

Next, Briar maintains that the curative amendment meets the criteria of Section 609.1(c) of the MPC, 53 P.S. § 10609.1(c).[3]

In acting upon a curative amendment, the MPC requires the governing body to consider:

(c) The governing body of a municipality which has determined that a validity challenge has merit may accept a landowner's curative amendment.... The governing body shall consider the curative amendments, plans and explanatory material submitted by the landowner and shall also consider:

(1) the impact of the proposal upon roads, sewer facilities, water supplies, schools and other public service facilities;

(2) if the proposal is for a residential use, the impact of the proposal upon regional housing needs and the effectiveness of the proposal in providing housing units of a type actually available to and affordable by classes of persons otherwise unlawfully excluded by the challenged provisions of the ordinance or map;

(3) the suitability of the site for the intensity of use proposed by the site's soils, slopes, woodland, wetlands, flood plains, aquifers, natural resources and other natural features;

(4) the impact of the proposed use on the site's soils, slopes, woodlands, wetlands, flood plains, natural resources and natural features, the degree to which these are protected, or destroyed, the tolerance of the resources to development and any adverse environmental impacts; and

(5) the impact of the proposal on the preservation of agriculture and other land uses which are essential to public health and welfare.

Briar maintains that it presented evidence from Edward Baszczewski, a professional engineer and land surveyor, who testified that the existing roadway is adequate for the development and that the development would have no impact on the school system. As to water and sewer, Andrew Keister, P.E., testified that there is adequate public sewer and water available to service the site.

**3.** Added by the Act of June 1, 1972, P.L. 333.

As to the land, the properties are currently vacant with a mix of vegetative growth. Due to the commitment that the properties will be serviced by public sewer and water, the soil types are not a relevant factor in the development of the properties. Development of the properties will comply with all applicable state and federal regulations regarding the safeguard of the hydrology of the site.

The soils and slopes will also be protected with the required submission of a soil erosion and sediment control plan. The development will be limited to those uses permitted within the Commercial district.

Finally, as to the impact on the preservation of agricultural and other land uses which are essential to the public welfare, Briar maintains that any agricultural use of the properties will cease upon its development as a commercial use. Jack Varaly, a professional land use planner, testified that in reviewing the Ordinance and comprehensive plan, the proposed curative amendment "fits like a glove" in terms of matching the goals and policies of each. Varaly cited to eight different sections in the comprehensive plan where it refers to the properties as being ideally suited for commercial and industrial growth. The access to Interstate 80 and State Route 11 make the properties ideal for commercial and industrial uses. Also, the comprehensive plan indicates that the future of farming in the area had been eliminated by the commercial and industrial development pressures taking place along State Route 11.

Briar also maintains that commercial development of the properties would be a public benefit to the community, given its proximity to Interstate 80 and State Route 11. The development would be consistent with ordinary growth in the neighborhood based upon the surroundings.

The Board responds that, as stated in *CACO Three*, inconsistency with a comprehensive plan is not a proper basis for denying a land development, nor can it be a basis for a substantive challenge to a zoning ordinance. We agree with the Board that consideration of such factors is necessary when it has been determined that a validity challenge has merit. Here, however, Briar has challenged the Ordinance, claiming it is inconsistent with the comprehensive plan. As we have already concluded that such is not an adequate basis for invalidation of a zoning ordinance, in accordance with Section 303(c) of the MPC, consideration of such factors is of no moment.

 Briar also maintains that the properties, as they are currently zoned, result in illegal spot zoning and that the refusal to grant the curative amendment would result in reverse spot zoning. Reverse spot zoning occurs when an island develops as a result of a municipality's failure to rezone a portion of land to bring it into conformance with similar surrounding parcels that are indistinguishable. *Guentter v. Borough of Lansdale*, 21 Pa. Cmwlth. 287, 345 A.2d 306 (1975). Briar maintains that there are commercial uses in the area and changing the classification of the land to Commercial will create a natural extension of an existing zoning district.

Additionally, Briar argues that the split zoning of one of the properties requires it to be re-zoned because the portion of that property which is zoned Commercial cannot be used for commercial purposes because the land cannot be accessed except through the portion of the property which is zoned Agricultural. Split zoning is also inconsistent with sound planning and zoning methods.

The Board responds that the zoning map for the Township provides for sub-

stantial commercial/industrial zoning on the northern side of Route 11 and further provides substantial areas of agricultural zoning behind the commercial/industrial zoning on the northern side of Route 11. There is no island zoned Agricultural within the Commercial district which constitutes spot zoning. Briar is merely seeking to re-zone Agricultural land to Commercial. The testimony showed that a substantial part of the land that is zoned Agricultural is, in fact, being used for agricultural purposes.

■ Although Briar argues that failure to grant the curative amendment would result in reverse spot zoning, which occurs when a property subject to restrictive zoning is left behind improperly when other properties are rezoned to more permissive categories. *In re Realen Valley Forge Greenes Associates,* 576 Pa. 115, 838 A.2d 718 (2003). No such situation occurred here. No evidence was introduced that other properties were rezoned to more permissive categories. The land which is zoned Agricultural abuts other Agricultural property and does not sit as an island constituting any type of spot zoning.

In accordance with the above, the decision of the trial court is affirmed.

### ORDER

Now, August 18, 2010, the order of the Court of Common Pleas of the 26th Judicial District (Columbia County Branch), in the above-captioned matter, is affirmed.