# JDL Enterprises Unlimited, L.P. v. Zoning Hearing Board of South Whitehall Township

C.P. of Lehigh County, No. 2012-C-4108.

*Erich J. Schock,* for appellant.
*Maria C. Mullane,* for appellee.
*Kevin T. Fogerty,* for intervenor.

FORD, *J.,* March 1, 2013—This is a zoning appeal involving a dimensional variance. Bruce Ebert, an owner of real property located at 2562 PA Route 309 in South Whitehall Township, filed an application for zoning relief with the Zoning Hearing Board of South Whitehall Township (board). In the application, Mr. Ebert requested, among other things, a dimensional variance to expand the commercial building located on his property. Mr. Ebert currently operates a Sunoco gas station and a convenience store on the property. He sought the dimensional variance to allow him to expand the area of the building on the property to enable him to add a Subway restaurant at the site.

The building that Mr. Ebert wishes to expand was constructed in 1959 by a former owner of the property. The building does not conform to the South Whitehall Township Zoning Ordinance (ordinance) in that it was constructed into the mandated setback areas on two sides of the property. Under sections 12.25(e)(7)(C) and 12.25(e)(6)(D) of the ordinance, expansion of a nonconforming building such as Mr. Ebert's is allowed so long as the expansion does not exceed 25 percent of the building's current size. In his application for zoning relief, Mr. Ebert proposed adding 1,064 square feet to the 1,288 square foot nonconforming building. This represented an 83 percent increase in building size which is greater than the 25 percent allowed. Thus, Mr. Ebert sought a dimensional variance.

The board conducted public hearings on Mr. Ebert's application on May 23 and July 25, 2012. At the conclusion of the July 25 hearing, the board voted to grant Mr. Ebert's application in its entirety, including his request for a dimensional variance. The board confirmed the vote in a written decision issued on September 5, 2012. The written decision included findings of fact and conclusions of law.

On October 5, 2012, JDL Enterprises, L.P. (JDL) began this suit by filing an appeal from the Board's decision to grant Mr. Ebert a dimensional variance. JDL owns the property directly across Route 309 from Mr. Ebert's property. JDL owns and operates a Burger King Restaurant on that property. Prior to filing this appeal, JDL appeared at the hearings on Mr. Ebert's application

for zoning relief and opposed the application.

On October 23, 2012, Mr. Ebert filed a notice of intervention in this zoning appeal. On January 8, 2013, JDL filed its brief in support of the zoning appeal. On January 15, 2013, Mr. Ebert filed a brief in opposition to the zoning appeal. The board, the appellee in this case, has deferred to Mr. Ebert in leading the opposition to this appeal and has joined in his brief.

On appeal, JDL asserts that the Board committed an error of law in granting Mr. Ebert a dimensional variance for the following reason:

> A review of the record shows no testimony or evidence regarding a physical hardship affecting the Property to justify the Zoning Relief. Rather [Mr.] Ebert primarily testified about the economic hardship he would sustain if the Zoning Board denied [the application] and he cannot expand the building.

(JDL's brief, P.5.)

When reviewing a decision of a zoning board, the court must determine whether the board abused its discretion or committed an error of law. *C & M Developers, Inc. v. Bedminster Township Zoning Hearing Board*, 573 Pa. 2, 14, 820 A.2d 143, 150 (2002). If the record includes findings of fact by a zoning board and the court does not take additional evidence, the findings of the board "shall not be disturbed by the court if supported by substantial evidence." 53 P.S. § 11005-A. Substantial evidence is "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Lantos v. Zoning Hearing Board of Haverford Township*, 153 Pa.Cmwlth. 591, 597, 621 A.2d 1208, 1211 (1993).

In Pennsylvania, the requirements for obtaining a variance are defined by 53 P.S. § 10910.2(a). According to that statute, a zoning board may grant a variance if five elements are met: (1) there are unique physical conditions on the property in question; (2) applying the given zoning ordinance to the property with the unique physical conditions makes it impossible for the property owner to make reasonable use of the property; (3) such unnecessary hardship has not been created by the applicant; (4) the variance, if granted, will not alter the essential nature of the neighborhood; and (5) the variance represents "the minimum variance that will afford relief and . . . represent[s] the least modification possible of the regulation in issue."

This case involves a request for a dimensional variance. The Pennsylvania Supreme Court stated:

> When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations. Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation.

*Hertzberg v. Zoning Hearing Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 257, 721 A.2d 43, 47

(1998).

The Pennsylvania Commonwealth Court clarified the *Hertzberg* decision as follows:

> *Hertzberg* articulated the principle that unreasonable economic burden may be considered in determining the presence of unnecessary hardship. It may also have somewhat relaxed the *degree* of hardship that will justify a dimensional variance. However, it did not alter the principle that a substantial burden must attend *all* dimensionally compliant uses of the property, not just the particular use the owner chooses. This well-established principle, unchanged by *Hertzberg*, bears emphasizing in the present case. A variance, whether labeled dimensional or use, is appropriate "only where the property, not the person, is subject to hardship."

*Yeager v. Zoning Hearing Board of the City of Allentown,* 779 A.2d 595, 598 (Pa.Cmwlth. 2001) (internal citations omitted).

Contrary to JDL's contentions, the board heard and considered evidence of unique physical conditions on Mr. Ebert's property which made it impossible for him to make reasonable use of his property under the current zoning requirements. On this topic, the board stated the following in its written decision approving Mr. Ebert's application for a dimensional variance:

> The subject Property is encumbered with unique physical circumstances and conditions that create unique constraints and obstacles with the development

of the Property and thus, create an unnecessary hardship with the Property. The Property is an irregularly-shaped, long and narrow lot that is split-zoned both commercial and residential. The existing Motor Vehicle Service Station use and the one story building was established on the Property in 1959, a time predating the advent of any zoning regulations in 1961 in the Township. A rezoning of the property in 1996 by the Township Board of Commissioners converted the existing Motor Vehicle Service Station use into a permitted Special Exception use (Applicant's Exhibit A-7). However, while the Applicant's use on the Property is no longer non-conforming, the Property itself has many nonconforming conditions, including among others, the nonconforming setbacks of the existing building which encroaches into a portion of the front and South side yard setback areas. The prior-existing, nonconforming condition with the existing building . . . was not created by the Applicant (Mr. Ebert).

. . .

The existing building, which is only 1,288 square feet in size, is nonconforming in setbacks and because of this nonconforming condition, the Applicant is limited to a floor area expansion of only 322 square feet under Section 12.25(e)(7)(C) of the Zoning Ordinance. The Applicant testified that such a limited expansion is wholly inadequate for the proposed Subway sandwich shop use. The Applicant testified that a building expansion beyond the floor area permitted under the Zoning Ordinance for a permitted use is necessary in

order to allow the Property to remain economically viable.

(Decision of board, 9/5/12, pp. 15-17).

I now address two arguments raised by counsel for JDL at the argument conducted on January 29, 2013. First, counsel for JDL argued that Mr. Ebert, instead of pursuing a dimensional variance, had the option of demolishing the nonconforming building on his property and building a larger building outside of the setback areas mandated by the ordinance. This contention is undercut by the uncontroverted testimony before the board.

At the hearing before the board, Mr. Ebert explained that it would cost him $600,000 to demolish the nonconforming building on his property and construct a new, larger building. Alternatively, Mr. Ebert testified that expansion of the existing building would cost him $140,000. Thus, he explained that the option to construct a new building was not economically feasible. Under *Hertzberg*, it was proper for the board to consider these economic factors when ruling on Mr. Ebert's application for a dimensional variance. Furthermore, it was reasonable of the board to conclude that a dimensional variance was appropriate in this situation.

Second, counsel for JDL argued that Mr. Ebert's application for a dimensional variance must be denied based on the Commonwealth Court's holding in *Yeager v. Zoning Hearing Board of the City of Allentown*, 779 A.2d 595 (Pa.Cmwlth. 2001). In *Yeager*, the Commonwealth Court held that a property owner was not entitled to a

dimensional variance where the owner was already operating a profitable car dealership on his property and sought the variance simply to expand his business. Appellant argues that Mr. Ebert, like the property owner in *Yeager*, seeks the dimensional variance merely to increase his business revenue generated at the property.

Unlike the property owner in *Yeager*, Mr. Ebert testified that he has not been able to make a profit at his property in over 5 years. He explained that the dimensional variance will enable him to open a Subway restaurant on the property and hopefully generate a profit. This uncontroverted evidence demonstrates that Mr. Ebert, unlike the property owner in *Yeager*, cannot make reasonable use of the property unless he is granted the dimensional variance.

For all of these reasons, the board acted properly in granting Mr. Ebert's application for a dimensional variance. Therefore, JDL's appeal must be denied.