The **PIPER GROUP, INC., Charles E. Sigety, Katharine S. Sigety, Nero Enterprises, Sigety Trust c/o Trustees Charles Birge Sigety and Katharine K. Yon, Piperlands Properties, L.P., 110 Dark Hollow Road, LLC, Robert G. Sigety, Cornelius E. Sigety, Elizabeth D. Sigety, and Robert G. Sigety, as Tenants by the Entireties, and Robert G. Sigety GRAT c/o Trustee Cornelius E. Sigety, Appellants,**

v.

**BEDMINSTER TOWNSHIP BOARD OF SUPERVISORS and Bedminster Township.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 2010.
Decided March 12, 2010.
Reargument En Banc Denied
May 10, 2010.

---

See also 573 Pa. 2, 820 A.2d 143.

Robert W. Gundlach, Jr., Warrington, for appellants.

John B. Rice, Perkasie, for appellees.

BEFORE: PELLEGRINI, Judge, BUTLER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

The Piper Group, Inc., Charles E. Sigety, Katharine S. Sigety, Nero Enterprises, Sigety Trust c/o Trustees Charles Birge Sigety and Katharine K. Yon, Piperlands Properties, L.P., 110 Dark Hollow Road, LLC, Robert G. Sigety, Cornelius E. Sigety, Elizabeth D. Sigety and Robert G. Sigety, as Tenants by the entireties, and Robert G. Sigety GRAT c/o Trustee Cornelius E. Sigety (collectively, the Piper Group) appeal from the August 27, 2009, order of the Court of Common Pleas of Bucks County (trial court), which denied the Piper Group's land use appeal and affirmed the decision of the Board of Supervisors of Bedminster Township (Board) to deny the Piper Group's curative amendment application (Application). In the Application, the Piper Group challenged the constitutional validity of the Bedminster Township Zoning Ordinance (Ordinance) as imposing unreasonable restrictions upon the development of single-family detached housing in the Township's AP–Agricultural Preservation Zoning District (AP District).

On August 12, 1996, Bedminster Township (Township) adopted Ordinance 118, creating the Township's AP District with the intent to protect and preserve the agricultural nature of the area. In furtherance of this goal, Ordinance 118 required landowners with tracts of ten or more acres in the AP District to limit the density of development on their property. Specifically, Ordinance 118 required such landowners to identify and set aside between fifty and sixty percent of farmland soil as non-buildable site area (soil set-aside). After the non-buildable site area was subtracted from the tract's base site area, single-family residences could be built on the remaining buildable site area, provided that the lot size was at least one acre, excluding certain protected natural features. Further, a landowner was required to create a contiguous "building envelope" around the residence of at least 10,000 square feet. The Piper Group owns two separate tracts of land in the Township, which, together, cover approximately 400 acres situated entirely within the Township's AP District.

On August 20, 1996, C & M Developers, Inc. (C & M Developers) filed a substantive challenge with the Township Zoning Hearing Board (ZHB), arguing that the soil set-aside and other dimensional provisions in Ordinance 118 were unreasonable. Following three years of hearings on the matter, the ZHB denied C & M Developers' validity challenge, and this decision was affirmed by the trial court and by Commonwealth Court. However, our Supreme Court granted allocatur and, by decision dated November 1, 2002, reversed. *C & M Developers, Inc. v. Bedminster Township Zoning Hearing Board,* 573 Pa. 2, 820 A.2d 143 (2002). The Supreme Court determined that Ordinance 118's soil set-aside restrictions were reasonable and related to the Township's le-

gitimate interest in preserving its agricultural lands. However, the Court held that, when required in addition to the soil set-aside, Ordinance 118's one-acre minimum lot size unduly limited a landowner's ability to develop the remaining portion of his tract, and this further restriction was not reasonable or substantially related to the Township's agricultural preservation interest or any other welfare interest of the Township. Citing the testimony of one of the Township's witnesses, the Court observed that the Township adopted this one-acre minimum merely because it was a "good number" and would stall the development of large houses on small lots. Based on this expressed motivation, the Court characterized the limiting effect of the dimensional restrictions as a matter of private desire, rather than a matter of public welfare, and held that the Township could not employ zoning regulations to effectuate such an aim.[1] *Id.*

On November 7, 2002, six days after the decision in *C & M*, the Piper Group filed its Application with the Board pursuant to sections 609.1, 909.1(b)(4) and 916.1(a)(2) of the Pennsylvania Municipalities Planning Code (MPC),[2] substantively challenging the dimensional requirements set forth in sections 408(2)(b) and 513 of the Ordinance, the identical provisions that were challenged and found invalid in *C & M*. The Piper Group's Application applies to both its sites and includes a proposed curative amendment ordinance and development plans. In accordance with the Piper Group's proposed ordinance, the development plans permit the construction of 174 single-family dwelling units on a minimal lot area of 6,500 square feet on one site, and 179 single-family dwelling units on a minimal lot area of 6,500 square feet on the other site. The Piper Group also proposed the construction of a small sewage treatment plant and community water facility on both sites.

On November 12, 2002, in response to the *C & M* decision filed eleven days earlier, the Township entered into a settlement agreement with C & M Developers to resolve the case. In addition, on November 14, 2002, at the first available public meeting, the Township declared that it would undertake a municipal curative amendment pursuant to section 609.2 of the MPC.[3] On April 30, 2003, the Township adopted Ordinance 149 to cure the infirmities identified in *C & M*. Most notable among the changes made, Ordinance 149 reduces the minimum lot size twenty-six percent, from one acre to 32,000 square feet.

1. A zoning ordinance is a valid exercise of the police power when it promotes public health, safety or welfare and its regulations are substantially related to the purpose the ordinance purports to serve. In applying that formulation, Pennsylvania courts use a substantive due process analysis that requires a reviewing court to balance the public interest served by the zoning ordinance against the confiscatory or exclusionary impact of regulation on individual rights. The party challenging the constitutionality of certain zoning provisions must establish that they are arbitrary, unreasonable and unrelated to the public health, safety, morals and general welfare. Where their validity is debatable, the legislature's judgment must control. *Boundary Drive As-sociates v. Shrewsbury Township Board of Supervisors*, 507 Pa. 481, 491 A.2d 86 (1985).

2. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10609.1, 10909.1(b)(4), 10916.1(a)(2). Section 609.1 of the MPC was added by section 10 of the Act of June 1, 1972, P.L. 333, *as amended;* section 909.1(b)(4) of the MPC was added by section 87 of the Act of December 21, 1988, P.L. 1329, *as amended;* and section 916.1(a)(2) of the MPC was added by section 99 of the Act of December 21, 1988, P.L. 1329, *as amended.*

3. Added by section 2 of the Act of October 5, 1978, P.L. 1067, *as amended*, 53 P.S. § 10609.2.

Thereafter, between May 12, 2003, and January 15, 2007, fifty-four hearings were held before the Board on the Piper Group's Application. Throughout these proceedings, the Board was represented by the Township Solicitor, who had represented the Township in *C & M* but assumed the role of the Board Solicitor; Special Township Counsel was appointed to represent the Township in opposition to the Piper Group's Application.[4] During this period, the Township further amended its Ordinance by adopting Ordinance 162 on July 20, 2005, thereby facilitating more development within the AP District.

On March 26, 2007, the Board issued a lengthy adjudication denying the Piper Group's Application, and the Piper Group filed a land use appeal with the trial court, appealing the Board's decision. Following oral argument and the filing of briefs,[5] the trial court, by opinion and order dated August 27, 2009, denied the Piper Group's appeal and affirmed the Board. The Piper Group now appeals to this court.[6]

The critical issues raised here are: (1) whether the Piper Group is entitled to approval of its November 7, 2002, Application based solely on the Supreme Court's decision in *C & M* and the Board's settlement agreement with C & M Developers; (2) whether a *de novo* standard of review should be applied in this case because the Board, and the Board Solicitor in particular, conducted the hearings in a manner that violated the Piper Group's due process rights; (3) whether the trial court erred in holding that the Piper Group's requested relief is unreasonable and in failing to discuss whether the Piper Group's proposed use and development plans satisfied the criteria set forth in section 609.1(c) of the MPC, 53 P.S. § 10609.1(c); and (4) whether the trial court erred in determining that Ordinance 149 cured the defects identified by the Supreme Court in *C & M*.

The trial court ably addressed and correctly decided each of these issues in its thorough and thoughtful opinion. Accordingly, we affirm, adopting the well-reasoned opinion of Judge C. Theodore Fritsch, Jr., entered in *The Piper Group, Inc. v. Bedminster Township Board of*

---

4. Section 916.1(c)(3) of the MPC provides that, where a validity challenge is heard by the governing body, it shall be represented and advised at the hearings by the municipal solicitor. 53 P.S. § 10916.1(c)(3). As permitted by section 916.1(c)(4) of the MPC, 53 P.S. § 10916.1(c)(4), the Township engaged Special Township Counsel to present its case.

5. Previously, the Piper Group had filed a motion with the trial court for leave to supplement the record and present evidence it claimed was improperly precluded at the Board hearings. After the submission of briefs and oral argument on the issue of supplementation, the trial court denied the motion, concluding that the Piper Group failed to establish that it was denied the opportunity to include relevant testimony and that the voluminous record was adequate to allow for appellate review. *See* section 1005-A of the MPC, added by section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11005-A (relating to hearing and argument on land use appeal). The parties then filed briefs and conducted argument on the merits of the Piper Group's land use appeal.

6. Where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the Board committed an abuse of discretion or an error of law. *Baker v. Chartiers Township Zoning Hearing Board*, 677 A.2d 1274 (Pa.Cmwlth. 1996), *appeal denied*, 547 Pa. 738, 690 A.2d 238 (1997). The Board abuses its discretion when its findings of fact are not supported by substantial evidence. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

*Supervisors,* (Bucks County, No. 07–3457–29–5, filed August 27, 2009).

### ORDER

AND NOW, this 12th day of March, 2010, the order of the Court of Common Pleas of Bucks County is affirmed on the basis of the opinion issued by Judge C. Theodore Fritsch, Jr. in *The Piper Group, Inc. v. Bedminster Township Board of Supervisors,* (2010), Court of Common Pleas of Bucks County, No. 07–3457–29–5, filed August 27, 2009.

### APPENDIX

### IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

### CIVIL ACTION—LAW

THE PIPER GROUP, INC., CHARLES E. SIGETY, KATHARINE S. SIGETY, NERO ENTERPRISES, SIGETY TRUST C/O TRUSTEES CHARLES BIRGE SIGETY AND KATHERINE K. YON, PIPERLANDS PROPERTIES, L.P., 110 DARK HOLLOW ROAD, LLC, ROBERT G. SIGETY, CORNELIUS E. SIGETY, ELIZABETH D. SIGETY AND ROBERT G. SIGETY, AS TENANTS BY THE ENTIRETIES and ROBERT G. SIGETY GRAT C/O TRUSTEE CORNELIUS E. SIGETY

vs.

BEDMINSTER TOWNSHIP BOARD OF SUPERVISORS and BEDMINSTER TWP.

NO. 07–3457–29–5

LAND USE APPEAL

### ORDER

AND NOW, this *27th* day of **August, 2009,** upon consideration of the Land Use Appeal filed by The Piper Group, et. al., briefs filed by both parties, and after oral argument, it is hereby ORDERED and DECREED that the Land Use Appeal is DENIED. The April 7, 2007 Decision of the Bedminster Township Board of Supervisors is AFFIRMED.

BY THE COURT:

/s/ C. THEODORE FRITSCH, JR.

C. THEODORE FRITSCH, JR., J.

### IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

### CIVIL ACTION—LAW

THE PIPER GROUP, INC., CHARLES E. SIGETY, KATHARINE S. SIGETY NERO ENTERPRISES, SIGETY TRUST C/O TRUSTEES CHARLES BIRGE SIGETY AND KATHERINE K. YON, PIPERLANDS PROPERTIES, L.P., 110 DARK HOLLOW ROAD, LLC, ROBERT G. SIGETY, CORNELIUS E. SIGETY, ELIZABETH D. SIGETY AND ROBERT G. SIGETY, AS TENANTS BY THE ENTIRETIES and ROBERT G. SIGETY GRAT C/O TRUSTEE CORNELIUS E. SIGETY

vs.

BEDMINSTER TOWNSHIP BOARD OF SUPERVISORS and BEDMINSTER TWP.

NO. 07–3457–29–5

LAND USE APPEAL

### OPINION

The Piper Group, Inc., Charles E. Sigety, Katharine S. Sigety, Nero Enterprises, Sigety Trust c/o Trustees Charles Birge Sigety and Katharine K. Yon, Piperlands Properties, L.P., 110 Dark Hollow Road, LLC, Robert G. Sigety, Cornelius E. Sige-

ty, Elizabeth D. Sigety and Robert G. Sigety, as tenants by the entireties, and Robert G. Sigety GRAT c/o Trustee Cornelius E. Sigety (collectively "Piper Group" or "Appellants") have appealed from the April 7, 2007 decision of the Bedminster Township Board of Supervisors denying Appellants' curative amendment challenge. For the reasons stated herein, we dismiss the appeal, affirm the decision of the Board of Supervisors and issue the attached Order.[1]

## BACKGROUND

Appellants are the owners of two tracts of land in Bedminster Township, Bucks County, Pennsylvania. The tracts, together, cover approximately 400 acres of land. Each is made up of several separate tax parcels. For ease of discussion, we will refer to the sites as they have been identified throughout these proceedings, as the "Pipersville" site and the "Kellers Church" site.[2] Both properties are located within the Township's Agricultural Preservation Zoning District (hereinafter "AP District").

Bedminster Township (hereinafter the "Township") is a predominantly rural municipality located in Upper Bucks County. Retaining the agricultural nature of the area is one of the Township's primary goals, as is clearly set forth in the Township's Comprehensive Plan. In 1996, with the intent to protect its unique rural character, the Township Board of Supervisors amended the Township Zoning Ordinance to establish an AP District. Approximately ninety percent of the Township is locat-

ed within the AP District. Ordinance 118, which created the AP District, preserved the area's prime farmland in part by controlling the density of permitted development. As is indicated in the Comprehensive Plan, the AP District is not an area in which growth is to be concentrated, rather high density development is provided for in the Township's R–3 Residential District. Ordinance 118 provided that prior to subdivision or development, a landowner of a tract of land containing more than ten acres was required to identify certain high quality farm soils and set aside between sixty percent of prime farmlands and fifty percent of other farmlands on a contiguous tract as non-buildable area (hereinafter "farmland tract" or "soil set-aside"). Single family residences could be developed on the remaining portion of the land, the buildable-site area, provided that the lot size was at least one acre. Said lots could not include certain natural features, including watercourses, flood plains, wetlands or ponds. Additionally, under Ordinance 118, the landowner was required to create a building envelope around the residence of at least 10,000 square feet.

A brief recitation of the history of litigation surrounding Ordinance 118 is warranted in our discussion. In 1996, C & M Developers, Inc. (hereinafter "C & M Developers") filed a substantive challenge to Ordinance 118 with the Township Zoning Hearing Board, arguing that the aforementioned soil set-aside and dimensional requirements were unreasonable. The Board denied the challenge, finding that C & M Developers had failed to meet its burden of establishing that the Ordinance

---

1. We acknowledge that our analysis differs in some respects from the reasoning of the Bedminster Township Board of Supervisors as set forth in the Adjudication (hereinafter "Board Adjudication") below. We nevertheless reach the same result.

2. We acknowledge the argument raised by Appellants regarding the Board's decision not to include various parcels of land in making its determination. As we deny the present appeal for other reasons, we will not address this issue.

was constitutionally invalid and upholding the regulations as a reasonable means of accomplishing the Township's interest in preserving agricultural lands. The Board decision was affirmed on appeal by both the Bucks County Court of Common Pleas and the Commonwealth Court of Pennsylvania. C & M Developers then filed an appeal to the Pennsylvania Supreme Court (hereinafter "Supreme Court"), which granted allocator.

On November 1, 2002, the Supreme Court issued a decision overturning, in part, the decisions of the lower courts. *C & M Developers, Inc. v. Bedminster Township Zoning Hearing Board*, 573 Pa. 2, 820 A.2d 143 (2002). The Supreme Court recognized that under the soil set-aside requirement, a landowner is precluded from using approximately fifty percent of his land for development. Nevertheless, the Court declared that the soil set-aside regulation was valid and rationally related to the Township's interest in preserving its agricultural lands. The Court, however, found that the one acre minimum lot size restriction, coupled with the other dimensional requirements, unduly limited a landowner's ability to sell, subdivide, or develop the buildable-site area that remained after the farmland tract was set aside. The Court expressly struck down the Township's justification for the minimum lot size as unreasonable. The testimony elicited at the C & M Developers proceedings showed that the one acre lot size was adopted solely because it "seemed like a good number" and was enacted with the intention to stall the development of large houses on small lots. The Court found that the Township's motivation to regulate beyond the farmland set-aside requirements "exudes an exclusionary purpose" and was not substantially related to the general welfare of the community. As the

Township failed to adequately justify why the greater protection was required, the Court found that it had exceeded its police power. The Court did not comment on what dimensional requirements would be reasonable or what type of interest could have justified the Township's dimensional requirements. Reargument was requested and subsequently denied on December 30, 2002.

Prior to the Supreme Court decision in *C & M Developers*, the Township had no reason to question its ordinance or reduce its dimensional restrictions, which had been upheld by both the Court of Common Pleas and Commonwealth Court. During the time period that the C & M appeal proceeded through the Pennsylvania judicial system, Bedminster Township revised several sections of its Zoning Ordinance. Included in the changes, soils of local importance were removed from protection and the Township authorized a Transferable Development Rights ("TDR") program permitting landowners in the AP District to transfer development rights to the Township's Industrial District. Although the revisions as a whole undoubtedly affected development in the AP District, the language of Sections 408 and 513 dealing with dimensional restrictions remained identical to the provisions challenged by C & M Developers.

On November 7, 2002, six days after the Supreme Court overturned the Zoning Hearing Board's decision in *C & M Developers* and declared the minimum lot size requirement of Ordinance 118 unjustified and constitutionally invalid, Appellants filed a Curative Amendment Challenge with the Township Board of Supervisors pursuant to Section 609.1 of the Pennsylvania Municipalities Planning Code (hereinafter "MPC"), 53 P.S. § 10609.1. (Exhibit B–1). Relying on the *C & M Developers* decision, Appellants

substantively challenged the constitutionality of the dimensional requirements set forth in the August 14, 2002 Zoning Ordinance, specifically Sections 408(2)(b)(iv), (v), and (vi) and Section 513, line 2. These provisions set forth the minimum lot size, building envelope, and other dimensional restrictions on development in the AP District on tracts of land greater than ten acres. These are the same provisions that were analyzed in the Opinion issued by the Supreme Court just days earlier.

As part of the cure challenge, Appellants submitted a Curative Amendment Ordinance which would create a new use within the AP District. The proposed ordinance would respect the agricultural set-aside provisions of the Ordinance but would allow single-family detached dwellings to be constructed in the non-preserved lands at a density of 1 unit per acre of the base-site area of the property, which is the area of the entire property, not just the buildable-site area. The proposed amendment also provides for development with less restrictive dimensional regulations and would allow multiple landowners in the AP District to consolidate their properties in order to maximize the base-site area and also to maximize the size of the farmland set-aside tracts. Appellants submitted development plans in accordance with their Curative Amendment, proposing 180 single family dwelling units on the Pipersville Property and 181 on the Kellers Church Property. The proposed minimum lot size would be 6,500 square feet. The plans also included the construction of a small sewage treatment plant and water facilities on each site. Appellants proposed to preserve 80 acres of farmland and 65 acres of homeowner association open space on the Pipersville Property and 122 acres of farmland and 9 acres of homeowner association open space on the Kellers Church Property.

On November 14, 2002, the Township responded to the *C & M Developers* case and declared a Municipal Curative Amendment pursuant to Section 609.2 of the MPC. This action took place thirteen days after the *C & M Developers* decision was rendered and at the first available public meeting. The Planning Commission and the Township then analyzed their obligations under the decision of *C & M Developers,* taking the bulk of the 180 day grace period allotted under Section 609.2 of the MPC to consider and draft an amendment. On April 30, 2003, the Township adopted Ordinance 149 to cure the deficiencies identified in the *C & M Developers* case. Ordinance 149 directly addresses the concerns of the Supreme Court in *C & M Developers* and reduces the minimum lot size from 43,560 square feet (one acre) to 32,000 square feet. This is a 26% reduction in lot size.

Hearings on Appellants' Curative Amendment Challenge began before the Board of Supervisors on May 12, 2003, and continued through January 15, 2007. The several month delay between the application and the first hearing was at the behest of Appellants. Fifty hearings were held in this matter over the course of three and one half years and the transcripts of eight additional hearings from the related Bedminster Associates Curative Amendment Proceeding, Court of Common Pleas Docket No. 07–02636–29–5, were incorporated into the Record. Throughout the proceedings the Township Solicitor, the law firm of Grim, Biehn & Thatcher, represented the Board. Special Township Counsel, Stephen P. Imms, was appointed to represent the Township at the hearings. Appellants have been represented by their current counsel since the inception of this matter.

During the course of the proceedings, on July 20, 2005, the Township further amended its Zoning Ordinance by adopting Ordinance 162. The prior Ordinance only permitted for development of tracts greater than 10 acres. Ordinance 162, however, regulates the development of tracts containing five or more acres, thereby facilitating more development within the AP District. (Exhibit A–59). Additionally, farmland soils may now be approved for protection on one or more preservation tracts, rather than solely on one contiguous tract. Ordinance 162 also decreases the minimum building envelope from 10,000 square feet to 7,000 square feet and reduces the minimum lot width from 175 feet to 150 feet.

On April 2, 2007, the Board of Supervisors issued a written Adjudication denying Appellants' challenge for (1) failing to prove that the Zoning Ordinance was unconstitutional; (2) failing to show that Ordinance 149, taken with later enacted Ordinance 162, did not cure the defects; and (3) failing to show that the proposed Curative Ordinance was reasonable. The Adjudication is a comprehensive decision, spanning 52 pages, containing 160 findings of fact, 25 conclusions of law, and an in depth discussion of the merits of Appellants' curative amendment challenge.

On May 2, 2007, Appellants filed their Notice of Land Use Appeal with the Bucks County Court of Common Pleas, commencing the matter now before this Court. Appellant raised numerous issues on appeal, alleging due process violations, substantive defects and procedural defects. The delineation of alleged errors spans 26 pages of Appellants' Notice of Appeal. Due to the volume, we will not separately address each issue in this Opinion, but rather will address them in small groupings in the course of our analysis.

Appellants filed a Motion for Leave to Present Additional Evidence on March 13, 2008. A briefing schedule on the issue of supplementation was issued on June 4, 2008. Oral argument was held on the issue on July 21, 2008. After both parties filed multiple briefs on the issue of supplementation, we denied Appellants' Motion, finding that the nearly four-year record was more than adequate upon which to decide the substantive appeal. The Order denying supplementation was issued on October 21, 2008. A briefing schedule was issued on November 14, 2008 and both parties filed detailed briefs on the complex issues of this land use appeal. Oral argument was requested by Appellants and was held on the record on March 31, 2009.

### DISCUSSION

We begin our discussion by addressing the unique chronology of this case. To restate the timeline, the Pennsylvania Supreme Court rendered its decision in the *C & M Developers* case on November 1, 2002. Six days later, on November 7, Appellants had prepared and filed their Curative Amendment Challenge with the Board of Supervisors. Their allegations of constitutional invalidity relied squarely and solely on the *C & M Developers* decision. The Board of Supervisors, acting on the holding of our highest Court, assembled at the next available public meeting to declare that the Township would amend its Zoning Ordinance to correct the defects illuminated by the Supreme Court. This meeting took, place on November 14, 2002.

The issue of timing in matters of zoning challenges has been addressed at length by the courts of this Commonwealth. In 1974, the Pennsylvania Supreme Court created the "pending ordinance doctrine," stating that a municipality is prohibited from thwarting "a valid challenge to its zoning ordinance by adopting a curative provision, which was not considered or ad-

vertised prior to the time of the challenger's application." *Casey v. Zoning Hearing Bd. of Warwick Twp.*, 459 Pa. 219, 328 A.2d 464, 469 (1974). In defining the doctrine, the Supreme Court explained that when a landowner is successful in his constitutional challenge to a zoning ordinance, the municipality is prohibited from denying him meaningful relief by amending its ordinance to zone around the landowner or by requiring the landowner to comply with the amended ordinance. To do so, the Court recognized, would effectively deny a successful challenger relief and would discourage landowners from bringing valid constitutional challenges. Therefore, municipalities are not permitted a stay after a judicial declaration of invalidity so that they may amend their ordinance and apply the new provisions to the developer's proposed plan. However, when the amended ordinance is already pending at the time of the applicant's challenge, the unconstitutionality of the unamended ordinance is irrelevant and only the amended ordinance shall be considered. Under those circumstances, the landowner's rights to challenge the constitutionality of the unamended ordinance do not vest.

In explaining why the municipality is not permitted additional time to amend its ordinance to thwart a successful applicant's development plans, the *Casey* Court interpreted a now repealed section of the MPC which provided for a judicial stay to give the municipality time to correct its defect. The *Casey* Court determined that the Legislature had not intended to provide for an interim period after judicial determination has been made within which the municipality may remedy its ordinance. As explained above, to allow for such would permit the municipality to zone around the successful challenger and would strip him of any meaningful relief. This policy does not apply to all subsequent applicants, but only to the applicant who brought the challenge. The Court explained that the purpose of the stay provision is to protect the municipality, not obstruct the relief entitled to a successful challenger. The Court stated:

> Once a zoning ordinance is found to be constitutionally defective, the judgment invalidates the entire ordinance, not merely the zoning on a particular tract of land. By staying the 'effect' of its judgment for a limited time, a court can avoid the chaotic situation which would arise if the municipality remained temporarily unzoned. The municipality is given an opportunity to cure the defective ordinance in accordance with the determination of the court without fear of a flood of applications by landowners seeking to take advantage of the invalidity. The original ordinance would remain in effect and subsequent applicants would be on constructive notice of the municipality's intent to amend the defective ordinance and, therefore, would be unable to obtain vested rights based upon the ordinance's invalidity. In effect, a moratorium would be effectuated upon the challenging of the zoning ordinance and the application ... until an amended, constitutionally permissible ordinance could be enacted.

*Casey*, 328 A.2d at 468–69.

Although the provision interpreted by the *Casey* Court has been repealed, the reasoning remains sound. *Fernley v. Board of Supervisors of Schuylkill Township*, 509 Pa. 413, 502 A.2d 585, 589 (1985) (quoting *Casey*, 328 A.2d at 468–69). The Supreme Court in *Fernley* specifically stated that the underlying policy set forth in *Casey* remains valid and is reflected in Section 609.2 of the MPC. *Fernley*, 502 A.2d at 589. The language in current Section 609.2(3) of the MPC permitting a

municipality to disregard curative applications after it has declared its intention to amend its ordinance, also supports this conclusion. By allowing time for the municipality to draft its own cure, the Legislature protected the municipality from a flood of landowners hoping to piggy back on the applicant who initiated the successful constitutional challenge. Surely, the Legislature did not intend for an alternative result when a court of law declares an ordinance invalid. Therefore, we believe that the policy language set forth in *Casey* remains applicable today.

■ Accordingly, once a court has determined that a zoning ordinance or provision is constitutionally invalid, subsequent applicants are put on constructive notice of the municipality's intent to enact an amendment. This does not contravene the reasoning behind the pending ordinance doctrine because the party who brought the successful challenge is not thwarted from obtaining the relief sought. Rather, only subsequent applicants are prevented from lying in wait for court decisions in order to submit their plans before the municipality has a chance to act at the directive of the court.

■ As C & M Developers, Inc. successfully challenged the dimensional regulations of the Bedminster Township Zoning Ordinance, once the Supreme Court declared the ordinance unconstitutional, the Township could not amend its ordinance to zone around the application by C & M Developers. As the successful challenger, C & M Developers was entitled to reasonable relief in accordance with its proposed plans. We do not believe that the Legislature or the Courts intended for subsequent landowners who are unrelated to the C & M Developers case to be afforded such automatic relief. As discussed by the *Casey* Court, to find otherwise would

bring chaotic results and permit any number of landowners to race to file development plans the moment that the court strikes down an ordinance. It is unreasonable for municipalities to have to fear such a result, or to be punished for otherwise expeditiously and reasonably acting in response to a judicial invalidation of an ordinance.

We find that it was reasonable in the case at bar for the Township to declare its intent to amend the zoning ordinance at its next available public meeting. Said meeting was held only thirteen days from the date of the *C & M Developers* decision. We note that under the Rules of Appellate Procedure, R. 2542, a litigant has fourteen days from the date of a decision to file for reargument. The Township acted swiftly, organizing a public meeting and announcing its cure even before its petition for reargument before the Supreme Court was due. We find that the Township's actions were reasonable and therefore, under the specific circumstances of this case, we will not place the burden on the municipality to outrace landowners to announce a cure amendment first.

We further note that in anticipation that their reliance on the decision in *C & M Developers* would be struck down, Appellants presented independent evidence at the hearing to show that the Sections 408(2)(b) and 513 of the Bedminster Township Ordinance were constitutionally invalid. As the Supreme Court had already declared these precise Ordinance provisions unconstitutional, said presentation was unnecessary.

In sum, we find that under the facts of this particular case, the Township acted quickly and within a reasonable time period to declare their intention to amend the zoning ordinance in accordance with the C & M decision. To find that Appellants should be placed in the same posi-

tion as C & M Developers, the party whose challenge led to the declaration of unconstitutionality, would contravene the long recognized policy of the Supreme Court protecting a municipality from the fear of a flood of applications by landowners taking advantage of a finding that an ordinance is invalid. We therefore refuse to grant Appellants' appeal on the sole basis of the holding in the *C & M Developers* case. To find otherwise contravenes sound policy, equity, and logic.

## I. *Supplementation.*

On March 13, 2008, Appellants filed a Motion for Leave to Present Additional Evidence, requesting that this Court permit them to supplement the record to take evidence that was precluded at the hearing before the Board. This Court received comprehensive briefs from both parties on the issue of supplementation and subsequently held oral argument on July 21, 2008. By Order dated October 21, 2008, we denied Appellants' request to open the record.

With respect to supplementation of the record in a land use appeal, the MPC provides that:

> If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may remand the case to the body, agency, or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence . . .

53 P.S. § 11005–A.

■■■ It is a matter within the discretion of the trial court to determine whether supplementation of the record is appropriate under this statute. *Eastern Consolidation and Distribution Services, Inc. v. Bd. of Commissioners of Hampden,* 701 A.2d 621, 624 (Pa. Commw.Ct.1997). *"Only* where the party seeking the hearing demonstrates that the record is incomplete because the party was denied an opportunity to be heard fully, or because relevant testimony was offered and excluded" is a court compelled to open the record. *Id.* (emphasis in original). Therefore, where the court finds that the record was sufficient to effectively review and address the appeal, it is not required to hear additional evidence.

■■■ In the present matter, Appellants alleged that because of the biased nature of the hearings before the Board they was precluded from eliciting certain testimony and making certain exhibits part of the record.[3] Specifically, Appellants argued that evidence concerning the following subjects was precluded: negotiations and plans for future conservation easements and deed restrictions in the AP District, a community project in Chester County, the effect of the C & M Developers settlement agreement, the effectiveness of the Township's TDR program in preserving agricultural land, and evidence regarding the motivation behind the adoption of Ordinance 149.

In support of its argument asserting bias, Appellants relied heavily on *Crystal Forest Associates, LP v. Buckingham Township Supervisors,* 872 A.2d 206 (Pa. Commw.Ct.2005). In *Crystal Forest,* the trial court opened the record because the hearing below reflected a constant adversarial and biased spirit toward the peti-

---

**3.** Appellant's allegations of due process violations are addressed specifically herein, in Section IV.

tioning party's witnesses. The township's counsel used the hearing to "filibuster" by objecting to each question posed by the petitioner and following said objections with long drawn-out argument. The trial court found that the township's and the board's conduct effectively prevented the applicant from creating a complete record. By contrast, the township's witnesses were permitted to testify at length on a number of issues that were only tangentially related to the case. On appeal, the Commonwealth Court affirmed the trial court's decision to open the record so that the petitioner could be fully heard.

We note once more the voluminous record created before the Board of Supervisors in the present case. More than fifty hearings were held before the Board below. The record includes testimony spanning three years, hundreds of objections by counsel and corresponding argument, and 151 admitted exhibits. Unlike in *Crystal Forest*, our Appellants were provided the opportunity to create a substantial record. A review of the record shows that while there were many objections made by both parties, Appellants were not thwarted from eliciting relevant testimony, nor were the objections by opposing counsel categorically sustained.

Furthermore, there was sufficient evidence in the record to allow us to fully address Appellants' arguments concerning specific evidentiary rulings, which they suggest justify supplementation of the record. We determined that evidence concerning the conflict between agricultural and residential uses in a development in Chester County was irrelevant and properly excluded by the Board. That land is located in a different county, governed by a different ordinance, and would not be probative to the issues before us. Similarly, information regarding the settlement agreement reached in the C & M Developers case was also properly barred in the hearings below. For reasons set forth in detail herein, Appellants should not be afforded the same considerations as C & M Developers. As Appellants stand in a different place procedurally, the Township's actions with respect to C & M Developers are irrelevant.

We also find that evidence concerning the TDR program was rightly precluded as speculative and irrelevant as the witness on the stand testified that he did not perform a study on the Township's current TDR program. Testimony with respect to other programs in other municipalities was rightly determined to be irrelevant. Testimony regarding potential deed restrictions and open space easements in negotiation by the Township were also irrelevant to the issues in this case. The locations of then existing easements were of public record and discoverable, however restrictions that were not in place at the time of the curative amendment challenge have no bearing on this matter and their potential effect on the AP District would be speculative at best. Finally, we believe that evidence of the motivation behind the adoption of Ordinance 149 is irrelevant and was properly objected to by the Township and excluded from the hearings before the Board. The manner in which the ordinance affects and governs the development in the AP District depends not on the motivation of the Township Planning Commission, but rather the express words of the ordinance. Our inquiry is whether the Township Ordinance unconstitutionally restricts Appellants' ability to develop their land. We are not concerned with discussions of the Commission prior to adopting the ordinance and find that the exclusion of this evidence did not bias Appellants nor did it prejudice this Court's ability to adequately address the issues before us.

We note that all of the issues raised by Appellants in their motion for supplementation were also raised substantively as part of the land use appeal. Our decisions with respect to these evidentiary rulings are consistent with those set forth herein as to the substantive issues.

Finding that the record did not require supplementation in order to allow us to fairly and comprehensively address the substantive land use appeal, and that Appellants had failed to establish that they were denied the opportunity to be heard or that relevant testimony was excluded, we acted within our discretion and properly denied Appellants' motion.

## II. Standard of Review.

Appellants requested that this Court review the present matter de novo. As to this issue, we reiterate that the record in this matter is substantial. As noted herein, we found that Appellants were afforded the opportunity to create a complete record, and that no violations of due process occurred. Accordingly, we declined to make a de novo review.

Where a trial court has not received additional evidence, appellate review is limited to determining whether the Board abused its discretion or committed an error of law. Petition of Dolington Land Group, 576 Pa. 519, 839 A.2d 1021 (2003). The findings of the governing body shall not be disturbed by the Court if supported by substantial evidence. MPC, § 11005–A. We follow this clearly stated and long followed standard in our review of the decision of the Board of Supervisors.

Furthermore, the Board, as the factfinder is the sole judge of credibility with the power to resolve conflicts in the testimony and to reject even uncontradicted testimony if it should find said testimony lacking in credibility. Dolington, 839 A.2d at 1026; Nettleton v. Zoning Board of Adjustment, 574 Pa. 45, 828 A.2d 1033, 1041 (2003). This Court is therefore bound by the credibility findings of the Bedminster Township Board of Supervisors.

## III. Due Process.

Due process requires that an individual be afforded notice and an opportunity to be heard before being deprived of his property rights. Included in this protection is the right to a hearing before a fair and impartial tribunal. Accordingly, when a municipal tribunal is acting in an adjudicatory role it must abide by due process standards and avoid the appearance of impropriety. Appellants raise several issues on appeal alleging due process violations, all of which are based on the underlying contention that Appellants were not afforded a fair hearing. We note initially that this matter has been highly adversarial since its inception. More than three years of hearings ensued in this case and both sides zealously litigated their position, raising hundreds of objections that resulted in hundreds of evidentiary rulings by the Board. Despite the plethora of objections and argument evidenced on the record, Appellants were never prevented from coherently and effectively presenting their case before the Board or from creating a substantial and complete record. Considering these proceedings as a whole, we do not find that Appellants were denied a fair hearing so as to violate their right to due process.

With respect to their specific allegations, Appellants argue that the Board Solicitor impermissibly comingled his adversarial and adjudicatory functions. In a hearing before a municipal tribunal, the township solicitor is prohibited from acting as a legal advisor to the board and

also in an adversarial capacity on behalf of the municipality. *Newtown Twp. Bd. of Supervisors v. Greater Media Radio Co.,* 138 Pa.Cmwlth. 157, 587 A.2d 841 (1991). Such comingling of functions is impermissible as it makes the proceedings susceptible to prejudice and exudes the appearance of impropriety. *Id.; see also Horn v. Hilltown Twp.,* 461 Pa. 745, 337 A.2d 858, 859–60 (1975), *Sultanik v. Board of Sup'rs of Worcester Tp.,* 88 Pa.Cmwlth. 214, 488 A.2d 1197 (1985). Appellants argue that Township Solicitor, the law firm of Grim, Biehn & Thatcher, as represented by John Rice, Esquire and Peter Nelson, Esquire (hereinafter "Solicitor"), unlawfully commingled its roles by advising the Board in the hearings before it. We disagree.

Pursuant to the MPC Section 916(c)(3), if a challenge to the validity of an ordinance is to be heard by the governing body, "the municipal solicitor shall represent and advise it at the hearing." The Solicitor, therefore, acted in accordance with the MPC when stepping into the role of Board Solicitor. In order to avoid bias, Special Counsel Imms was appointed to represent the Township in the challenge. Contrary to Appellants' contentions, the Solicitor specifically avoided commingling the roles of advocate and adversary by appointing counsel to independently represent the Township. That decision was within the bounds of the law and did not prejudice Appellants. Furthermore, once the proceedings before the Board of Supervisors were adjourned, the Solicitor was not barred from again representing the Township in any further proceedings initiated by Appellants.

We also do not find it unreasonable that the Solicitor acted as legal advisor in the preparation of Ordinance 118 and the subsequent Township cure ordinances. It is the role of the Solicitor to provide a legal review of the ordinances proposed by the municipal governing body. Such legislative involvement does not taint the fairness of the Solicitor's role in subsequent challenges to those ordinances. We acknowledge Appellants' concern, that the Township counsel who drafted Ordinance 118 became the Board's legal advisor and ruled on evidentiary issues. However, such is the nature of proceedings before municipal bodies. The adjudicative structure used by the Township was appropriate and Appellants have not challenged the constitutionality of the MPC sections providing for such structure, but rather rely on various allegations of impropriety. We do not find that the Township acted impermissibly and we will not undermine the MPC provisions providing for such procedural framework.

Appellants also raise several allegations relating to Township witnesses and their relationships with the Board and with the Township. Specifically, Appellants allege that the witnesses were biased, had ex-parte contacts with Board members and impermissibly consulted with Township counsel during the course of their testimony, which at times spanned several hearings. We find that the circumstances underlying each allegation do not support a finding that any wrongdoing took place. With respect to the allegations of ex-parte contacts, we find that the contact between Special Counsel Imms and the Board was solely to obtain financial authorizations for litigation costs. Regarding the other alleged contacts, between Township witness Michael Frank and Board member Morgan Cowperthwaite and also between Mr. Frank and the Township Solicitor, we find said contacts were appropriate and involved only a search for zoning ordinances and maps. These alleged contacts did not involve attempts to unduly influence the Board or address the specifics of the underlying matter.

We also note that in a relatively small rural township in Upper Bucks County, it is inevitable that township officials, board members, and potential witnesses will interact outside of the courtroom setting. We do not find that any of the contacts alleged were inappropriate or related to the matter at hand. Further, we do not find that the witnesses' prior relationships with the township caused bias. It is a certainty at a municipal hearing, specifically one related to an ordinance issue, that witnesses such as the township engineer and planner will be called to testify. To find that their current or former employment by the Township creates an automatic bias or invalidates the proceedings would restrict a municipality by limiting whom it is able to call to the stand, making it highly difficult for a municipality to effectively litigate its case.

Appellants also allege that the actions of one Board Member tainted the hearings. Board Supervisor Holland resigned during the course of the hearings as a result of criminal charges which were filed against him. We note that Mr. Holland was not the sole member of the Board and we find nothing in the record indicating that his administration of the hearings was biased or prejudiced Appellants.

On appeal, Appellants also challenge eight specific evidentiary rulings by the Board Solicitor over the course of the 58 hearings in this matter. Appellants assert that these rulings demonstrate that they were not afforded a fair hearing. As discussed herein with respect to the issue of supplementation, which addressed the same evidentiary rulings, we find Appellant's allegations without merit.

Preliminarily, we note that proceedings before a municipal governing body are less formal than those held in a court of law. *See* MPC, § 908(6) (stating that the formal rules of evidence do not apply). With respect to the rulings on Appellants' requests for the issuance of various subpoenas, a memo penned by Special Counsel Imms and a letter from the Solicitor, we find that the Board did not abuse its discretion by denying Appellants these documents. With respect to testimony regarding affordable housing and the transferable development rights program, we find that the Board ultimately did permit Appellants to create a record on these issues and that any precluded evidence was appropriately excluded as speculative or irrelevant. We also do not find that these few evidentiary rulings tainted the fairness of the entire hearing, prevented Appellants from creating a complete record, or deny them due process.

In sum, the actions of the Board as a whole do not evidence an unfair hearing. Rather, they show a balanced, yet adversarial proceeding before a municipal administrative tribunal. We therefore do not find that the Board of Supervisors denied Appellants a fair hearing in violation of their due process rights.

## IV. *Appellants' proposed ordinance and plan are unreasonable.*

Assuming, *arguendo*, that Appellants' constitutional attack on the Bedminster Township Ordinance has merit, we nevertheless find that the relief they seek is not reasonable. We preliminarily note that Appellants seek relief similar to that obtained by C & M Developers after the Pennsylvania Supreme Court ruled in their favor, no more and no less. As stated above, we find that Appellants are not entitled to stand in the same position as C & M Developers, as they did not bring the claim which ultimately invalidated Sections 408(2)(b) and 513 of the Bedminster Township Ordinance. We therefore are not bound to duplicate the relief granted to C

& M Developers as part of their settlement with Bedminster Township.

As part of their challenge, Appellants filed a proposed ordinance that would, if adopted, be applicable to the entire AP District. Appellants attempt to draw all focus to the effect of this ordinance on the property in question as opposed to the district as a whole. However, the proposed curative amendment undeniably affects the entire AP District and would create a use that is inconsistent with both the character of the land in that zoning district and the Township's interest in preserving farmland.

As discussed at length in the Board Adjudication, Bedminster Township has a strong interest in preserving its agricultural land and maintaining the rural nature of its municipality. (Board Adjudication, F.F. 122–160). This interest is vast, encompassing national policy issues, state-level conservation missions, and local preservation goals. For example, the Board brought to our attention that this Commonwealth has some of the most comprehensive farmland preservation programs in the United States. As part of its dedication to preservation, Pennsylvania has spent $415,812,173.00 acquiring conservation easements on more than 275,594 acres of farmland. The residents of Bedminster have joined in the effort, approving $2.5 million to enable the Township to purchase conservation easements beyond those set aside by the state. Consistent with the history of agricultural preservation across this Commonwealth, Bedminster crafted its zoning ordinance to preserve prime agricultural soils and to limit the density of non-farm residential development in areas of the Township where farming is a primary use. Appellants' proposed cure ordinance would effectively destroy the policies and actions taken by the taxpayers to maintain the character of their land.

Appellants' proposed ordinance respects the agricultural set-aside provisions mandated by the Township and upheld by the Supreme Court. However, it allows for single-family detached dwellings to be constructed in the non-preserved lands at a density of 1 unit per acre of the base-site area of the property, which is calculated by the area of the entire property, not just the buildable-site area.[4] Therefore, although roughly 60 percent of the farmland is set aside, the remaining portion of the land would have, at the very least, a density of 2.5 houses per acre. Appellants also propose a minimum lot size of 6,500 square feet. Recognizing the use of land for open space, roads, and other necessities, the potential density for residential developments with such a minimum lot size could be as high as 6.7 dwellings per acre in some areas. (Board Adjudication, F.F. 160). Furthermore, the proposed amendment permits multiple landowners in the AP District to consolidate their properties in order to maximize the base-site area and also to maximize the size of the farmland set-aside tracts. By maximizing base-site area, Appellants' proposal increases total acreage, in turn increasing the number of proposed dwellings they would be permitted to build on the buildable-site area.

Under the current dimensional provisions, Section 513 of Ordinance 162, high performance subdivision development in the residential (R–3) zoning district is permitted at a density of 3.0 units per acre. The density calculations are based on the net buildable-site area, not base-site area.

---

4. The Board determined that the density of one dwelling unit per acre base-site area was adopted by Appellants without undertaking any study of the appropriateness of this number. No legal or technical reason was provided at the hearing for this choice.

Additionally, while the minimum lot size for the performance subdivision development varies, cluster developments are permitted a minimum lot size requirement of 15,000 square feet. (Exhibit A–59, p. 14). Given the current R–3 zoning requirements, we find that Appellants' proposed ordinance seeks development that would be inconsistent with even the higher density construction permitted for in the R–3 zoning district. Appellants' proposal would place the highest density development in Bedminster Township squarely in the area marked for low density development and agricultural preservation. This contravenes the Township policies protecting farmland and preventing overdevelopment in the AP District, which were recognized by the Supreme Court as valid. In light of the interests shown by the Township and the long history of conservation of farmland in this Commonwealth, we affirm the determination of the Board in these respects and find that Appellants' proposed Cure Ordinance is unreasonable.

We note that both parties briefed the issue concerning whether Appellants' development plans satisfied the criteria set forth in Section 609.1(c) of the MPC. In light of our finding that Appellants' proposed Ordinance is unreasonable and would harm the integrity of the AP District, we will not further address this issue.

### V. *Reasonableness of the Township's Cure Ordinance.*

When a landowner files a substantive challenge to a zoning ordinance, the ordinance at issue is the one in existence at the time of the challenge. However, as discussed in detail above, when the ordinance has already been invalidated, the constitutionality of the unamended ordinance is no longer relevant. Instead, the focus of this Court should be on the ordinance in its amended form. *Casey,* 328 A.2d at 466 (when ordinance is pending at time of challenge, the court's concern is with the ordinance as amended). We acknowledge that in the present matter we do not have an ordinance that is "pending" as technically defined by case law. Nevertheless, under the unique chronology of this case, we will consider the Township's Cure Ordinance and will determine whether it provides an adequate, reasonable, and constitutional remedy in the case at hand.

We find that Bedminster Township has cured the defects delineated by the Supreme Court in the *C & M Developers* decision. Specifically, the Supreme Court invalidated the one acre minimum lot size restriction, finding that such a lot size, when coupled with the other dimensional requirements, unduly limits a landowner's use of his property. The Court expressly found that the Township's justification for the minimum lot size was unreasonable.

The Township enacted Ordinance 149 on April 30, 2003 in order to correct the unconstitutional provisions of its prior ordinance. Ordinance 149 created new ways in which to develop property in the AP District, reduced minimum width size to 150 feet, eliminated the building envelope requirement, and most notably, reduced the *minimum lot size from "one good acre"* to 32,000 square feet (slightly less than ¾ of an acre). In addition to this 26% minimum lot size reduction, Ordinance 149 created a maximum density of one dwelling unit for every two acres. (Exhibit A–50, tab "M"). By significantly reducing the minimum lot size requirement, the Township addressed the concern articulated by the Supreme Court.

We also find that the Township has adequately justified the new minimum lot size. As mentioned herein, the Township's Comprehensive Plan demonstrates the desire to keep rural areas less densely developed

in order to protect farmland and local farming operations. Expert testimony was presented that the purpose of reducing the minimum lot size to 32,000 square feet was to permit an increase in density while at the same time maintaining the integrity of the area by discouraging the construction of an unreasonably large number of new dwellings that would interfere with local agricultural activities. (N.T. 6/7/05, pp. 49–66).

In high density development districts, lot sizes are too small to contain individual water and sewage facilities. Therefore, dense residential developments must generally receive public water and sewage. When community water and sewage treatment systems are extended into the AP District there will inevitably be more residential development requested in that area. (Board Adjudication, F.F. 64). As the AP District is not an area marked for the type of residential growth that would justify extending such public facilities, permitting lot sizes that would require shared facilities runs contrary to the overall interest in discouraging high density residential growth. Therefore, for development in the AP District to be consistent with the Township's policies, lot sizes must be large enough to house on-site water supply and sewage disposal facilities.

On lot sizes smaller than one acre, special care must be taken to insure that the land has the capacity to protect the water supply from pollution from on-site septic tanks and other sewage treatment and disposal systems. In a memorandum prepared and submitted by Township expert Professor John Keene, the smaller the lot size, the more difficult it is to comply with state regulations maintaining certain distance requirements between water and sewage systems. The purpose of these regulations is to insure that the water supply is not contaminated by the sewage system. According to Professor Keene, the 32,000 square foot minimum lot size is a bright-line requirement enacted in order to assure that problems resulting from placing water and sewage facilities too close together do not occur. (Exhibit A–68). We find that both maintaining lower density development in the AP District in order to avoid conflicts between residential and agricultural uses, and the safety of the water supply are legitimate and reasonable justifications for enacting the 32,000 square feet minimum lot size.

As we find that Ordinance 149 cured the constitutional defects illuminated in the *C & M Developers* decision, and provides a reasonable framework for development, we need not discuss the impact of the Township's subsequently enacted ordinances. We note, however, that Ordinance 162, enacted during the course of the proceedings before the Board, did further amend the zoning ordinance to permit more reasonable and flexible development in the AP District.

For the above reasons we find that the Township cured all constitutional defects and currently has a zoning ordinance that permits reasonable development in the AP District, while maintaining the strong interests in preserving farmland and the integrity of farming operations in Bedminster Township.

### CONCLUSION

For the reasons set forth in this Opinion, we find that the Bedminster Township Board of Supervisors did not err in dismissing Appellants' Curative Amendment Challenge. Accordingly, we deny the appeal of The Piper Group, Inc., et. al., and issue the attached Order.

BY THE COURT:

/s/ C. THEODORE FRITSCH, JR.

C. THEODORE FRITSCH, JR., J.

*8/27/09*
Date